UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re | |
| PRIME CAPITAL VENTURES, LLC, | Chapter 7 |
| | Case No. 23- |
| Debtor. | |

## EMERGENCY MOTION OF PETITIONING CREDITORS FOR APPOINTMENT OF INTERIM TRUSTEE OVER PRIME CAPITAL VENTURES, LLC AND FOR RELATED RELIEF

Petitioning creditors Compass-Charlotte 1031, LLC ("Compass"), 526 Murfreesboro, LLC ("526 Murfreesboro") and Newlight Technologies, Inc. ("Newlight") (and together with Compass and 526, the "Petitioning Creditors") hereby move, pursuant to 11 U.S.C. §§ 105 and 303(g), and Federal Rule of Bankruptcy Procedure 2001(a), for the emergency and immediate appointment of an interim trustee over Prime Capital Ventures, LLC ("Prime") (the "Motion"). The Motion should be granted because:

(a) Prime appears to be part of a much bigger commercial loan fraud operation which has stolen millions of dollars;

(b) Prime alone has fraudulently taken and refused to return over $43 million dollars in deposits from innocent parties all across the United States, including over $20 million from Petitioning Creditors;

(c) Prime has been sued by its victims in courts and arbitration all across the country, has had its former lawyers withdraw from representing it, and is not appearing or providing a defense in numerous actions;

(d) Prime has held itself out as a reputable commercial lender operating from its headquarters in Albany, New York, but is not even registered to do business with the NY Secretary of State;

(e) Prime defrauded its victims, including Petitioning Creditors, by executing agreements that it would hold large interest deposits in dedicated accounts used solely to pay interest on loans which Prime promised to make, but never made those loans and did not keep the funds in dedicated accounts;

(f) Prime has been promising its victims for months (on almost a daily basis) that funds would be returned and that it would provide bank account statements showing where the money is, but has failed to do either; and

(g) Petitioning Creditors believe that Prime's activities have every indicia of a Ponzi scheme or similar fraud, and without the immediate appointment of a trustee, what few assets Prime may have are likely to be squandered, dissipated or lost.

## **FACTS**

### **A.  Kris Roglieri and His Family of Companies**

1.       Kris Roglieri ("Roglieri") is a businessman / financier who lives in Albany (or possibly Queensbury), New York.

2.       Roglieri is associated with numerous entities which he created or leads, including the following (among others):

(a) Prime Commercial Lending (www.primecommerciallending.com);

(b) The Finance Marketing Group;

(c) Commercial Capital Training Group (www.commercialcapitaltrainging.com);

(d) National Alliance of Commercial Loan Brokers; and

(e) Deal Maker (a publication for the Commercial Loan Brokerage Industry.

Attached as Exhibit A is a webpage from the Commercial Capital Training Group website which describes these entities as "A family of companies" and describes their origin and connections, all centered around Roglieri.

3.      A printout of Roglieri's LinkedIn page is attached hereto as Exhibit B.

4.      Per the New York Secretary of State, Prime Commercial Lending, LLC ("Prime Commercial") was formed as a New York limited liability company on July 26, 2006. Per its website, its principal place of business is at 66 South Pearl Street, 10th Floor.

5.      From various online filings, it appears that Prime Commercial was a small-time lender making loans as small as $22,000 business lines of credit up to $2,000,000 commercial real estate loans.

6.      For instance, Prime Commercial maintains a FaceBook page (facebook.com/primecommerciallend). According to a May 12, 2022 posting, Prime Commercial offers "commercial financing from $100,000 to $2,000,000 on a wide range of commercial property types":



7.  In another Facebook posting (March 1, 2022), Prime Commercial said "Check out these recently funded transactions by Prime Commercial Lending team this week" and listed the following:



### B. Interest Rates and Formation of Prime

8.      Between the global financial crisis in 2008 and March 2022, the Federal Reserve kept prime interest rates at extremely low levels, with the Prime Rate staying around 3.25% for most of that period.

9.      On December 14, 2021, Roglieri formed Prime Capital Ventures, LLC as a Delaware limited liability company.[1]  *See* Exhibit C (printout from Delaware Secretary of State website).

---

[1] Prime Capital Ventures, LLC is listed on the Delaware Secretary of State webpage with the File number 6471960.  There is another Delaware entity named Prime Capital Ventures LLC (without a comma) which has the File number 5144174.  This involuntary bankruptcy petition involves only the former.

10.     According to a federal court complaint filed by Prime as plaintiff in the United States District Court for the Northern District of New York, Prime has "its principal place of business in Albany County, New York" and it is a citizen of New York "because Prime's sole member, Kris Roglieri, is a resident of the State of New York." *Prime Capital Ventures, LLC v. Reign Financial International, Inc. et. al.* (23-cv-207, NDNY) (the "Reign Lawsuit"), Doc. 4 (First Amended Complaint) at ¶¶ 1-2 (attached hereto as <u>Exhibit D</u>)

11.     Upon information and belief, at all times, Roglieri was also the sole manager of Prime and acted as its Chief Executive Officer.

12.     Although Roglieri operated Prime from Albany, New York, he never registered Prime to do business there (as reflected by the lack of any registration with the NY Secretary of State).

13.     Further details about Prime and Prime Commercial are included in the "About Us" section of Prime Commercial's website, a copy of which is attached hereto as <u>Exhibit E</u>.[2]

14.     Starting in March 2022, the Federal Reserve began to quickly raise interest rates, ultimately leading to the present prime rate of 8.5% which became effective on July 27, 2023, a dramatic 5% increase in a little over a year. The following chart shows those interest rates increases:

---

[2] Petitioning Creditors note that Prime's Executive Vice President (Jon Consentino) is alleged on this website to have had a "long, storied, and successful background in banking."  It appears that Mr. Consentino is a prior Chapter 7 bankruptcy debtor in case 05-27320 (Bankr. W.D. NY) and may have worked with Prime Commercial since 2006.

| Effective Date | Rate |
| --- | --- |
| 7/27/2023 | 8.50% |
| 5/4/2023 | 8.25% |
| 3/23/2023 | 8.00% |
| 2/2/2023 | 7.75% |
| 12/15/2022 | 7.50% |
| 11/3/2022 | 7.00% |
| 9/22/2022 | 6.25% |
| 7/28/2022 | 5.50% |
| 6/16/2022 | 4.75% |
| 5/5/2022 | 4.00% |
| 3/17/2022 | 3.50% |

15.     These interest rate increases caused many borrowers challenges in obtaining funding from traditional bank lenders, and caused them to look to private equity lenders.

16.     Upon information and belief, Roglieri viewed the rising interest rates as an opportunity to defraud third parties by the strategy described hereafter.

**C.  Creation of Fraudulent Story Regarding ALUX Properties Loan**

17.     Roglieri knew that in order to gain the confidence of third parties, he needed to make them believe that Prime had the ability to make large commercial loans. To do this, he joined with other individuals to create an entirely fraudulent story about Prime and past lending deals that it had allegedly done.

18.     On March 17, 2022 (the same day the Fed started raising interest rates), Roglieri (through Prime Commercial) put out a public relations newswire announcing that "Prime Capital Ventures, which serves as Prime Commercial Lending's Large Balance Real Estate Fund" had funded a "successful $188 million deal with ALUX Properties, LLC for The Bailey, slated to be the first 5-Star luxury hotel and mixed-use property in Atlanta, GA." A copy of this PR newswire is attached hereto as <u>Exhibit F</u>.

19.     As part of his marketing campaign, Roglieri created a slick YouTube video touting the alleged $188 million loan to ALUX Properties. Among other things, that video stated about Prime: "WE Are Not Bankers . . . We Are Entrepreneurial Bankers."



20.     This marketing was a complete fraud, as Prime Capital Ventures never made any such loan to ALUX Properties.

21.     In fact, a search of land records in Atlanta (Fulton County) reveal that ALUX Properties never owned any real estate there and there is no recorded mortgage or other collateral loan documents recorded by Prime.

22.    On May 2, 2022, Roglieri doubled down on the marketing by having his affiliated company, DealMaker Magazine, publish an article entitled "Roglieri Unveils Prime Capital Ventures, Prime Commercial Lending's Newest Fund". A copy of the article is attached as Exhibit G.

23.    The article states that Prime was "a fund specifically designed to provide capital for large development, commercial development and commercial real estate transactions from $50 million to more than $1 billion."

24.    The article describes Prime as a "subsidiary" and "in-house fund" of Prime Commercial.

25.    The description of Prime as a "subsidiary" of Prime Commercial is contrary to Prime's own allegation in its federal court pleadings that it is wholly owned by Roglieri.

26.    In the article, Roglieri said that Prime would offer non-recourse lines of credit with rates at 4% to 6% with interest-only payments but would require borrowers to provide 20% cash upfront based on the total project cost. The 20% would be paid to Prime to hold "as prepaid interest throughout the term of the loan." As interest payments became due "we would just deduct it from the 20% down payment.  It's a unique way of doing things, but it ensures our payback, and it serves as additional collateral for the loan throughout the term."

27.    In order to convince third parties that Prime was a legitimate lender, Roglieri claimed in the article that Prime (just founded some 6 months before) had already funded multiple large commercial lending deals including:

(a) the $188 million "Bailey" project in Atlanta;

(b) apartment complexes in South Korea for $110 million and $300 million; and

(c) $2.3 billion in Dubai for a "massive mixed-use property in the city's center".

28.     Upon information and belief, the alleged projects in South Korea and Dubai were completely fabricated and created out of thin air to try to lure unsuspecting victims to deposit funds with Prime on the basis that it was going to provide a loan.

29.     In June 2022, a lawsuit was filed in Superior Court in Fulton County, Georgia against ALUX Properties and various other defendants (the "ALUX Complaint"). A copy of the verified ALUX Complaint is attached hereto as Exhibit H.

30.     The complaint details how the ALUX Properties deal was used to steal $10,000,000 from a third-party investor. At Paragraphs 80 and 81 it details how "Kris Roglieri, the CEO of Prime Capital Ventures, verified the wiring instructions for the $10,000,000 wire transfer, and later created a video with Defendant Brandon Wheeless in Atlanta" about the alleged hotel project.

31.     Notably, Exhibit E to the ALUX Complaint is a December 14, 2021[3] $169,320,000 Development Line of Credit Agreement with a Delaware entity called Blackwater Capital Group, LLC which required a $10,000,000 ICA Payment. The form of the Development Line of Credit Agreement used by Blackwater Capital Group is identical to the form of agreement that Prime used with its victims as described below.

---

[3] December 14, 2021 is also the date that Prime was formed as a Delaware limited liability company.

32.    On September 13, 2022, the Georgia Superior Court appointed a receiver over ALUX Properties and other defendants. A copy of that order is attached hereto as Exhibit I.

33.    The receiver appointed by the Georgia court was fortunately able to recover the $10,000,000 in that case as it was sitting in an account at PNC Bank in the name of Vanguard Holdings Group, LLC.  However, the Georgia court concluded that the entire situation was "a scheme to defraud Plaintiffs out of $10,000,000" and referred to the Development Line of Credit with Blackwater Capital Group, LLC as a "total fraud".[4] A copy of that judgment is attached hereto as Exhibit J.  A final judgment was entered against ALUX Properties, LLC and certain conspiring entities on August 4, 2023 (attached hereto as Exhibit K).

34.    Despite knowing that Prime never made any loan to ALUX Properties, Roglieri and Prime never removed their online YouTube video and continued to list it (and the video) on its website through at least December 16, 2023 (www.primecommerciallending.com/recently-funded) when the following screenshot was grabbed:

---

[4] The exact relationship between Prime, Roglieri, Blackwater Capital Group, LLC, and Vanguard Holdings Group, LLC is presently unknown but the fact that Prime and Blackwater used an identical Development Line of Credit Agreement speaks volumes, as does the fact that it was Roglieri who "verified the wiring instructions for the $10,000,000.00 wire transfer" as part of the scheme to defraud the Georgia lawsuit plaintiffs.  Exhibit H at ¶ 80.



35.     Even while ALUX Properties had been put into receivership in September 2022, Roglieri and Prime have continued to this day to tout that completely fictitious loan deal in order to ensnare unsuspecting third parties as victims.

### D.  Prime and Roglieri Ensnare Onward Holdings

36.     Based upon online marketing and in-person communications, Roglieri and Prime were able to convince multiple companies around the country to believe them and to wire money to Prime with the expectation that Prime was going to make them loans.[5]

37.     Upon information and belief, Roglieri and Prime took the money wired by borrowers and, instead of holding it in dedicated interest accounts as they were contractually required to do, took the money and used it for other purposes, including alternative investments and to fund Roglieri's flashy lifestyle.

38.     Upon information and belief, Prime never made any loans to anyone or, if it did, only made a few small loans and defaulted on the promised loans to most borrowers.

39.     The first victim that Petitioning Creditors currently know about was Onward Partners, LLC ("Onward"). In September 2022, Prime entered into a Business Expansion Line of Credit Agreement with Onward whereby Prime was required to provide a $107 million line of credit. On September 22, 2022 Onward and its affiliate wired $20 million to Prime to establish an interest reserve account (called an "ICA Payment"), which was to be used solely to pay interest payments once Prime had extended the line of credit.[6]

40.     Prime was required to make the first advance on the line of credit to Onward by February 9, 2023, but failed to do so, and has failed to do so since then.

---

[5] Prime and Roglieri added an air of legitimacy to their operation by including in the "About Us" section of their website, the picture and bio of their "Lead counsel," an attorney at a well-regarded law firm.  *See* Exhibit E That section included a link which went directly to the law firm's webpage for that attorney.

[6] This was just a week or so after the Georgia Superior Court appointed a receiver over ALUX Properties.

41.     Onward demanded its deposit back but has never received the full amount. That led Onward to file a federal court lawsuit against Prime and Roglieri in the United States District Court for the District of Utah on November 13, 2023 alleging, among other things, fraud, conversion, unjust enrichment and piercing the corporate veil (Case no. 23-cv-833). A copy of that complaint (the "Onward Complaint") is attached hereto as <u>Exhibit L</u>.

42.     According to the Onward case docket, Roglieri's response to the Onward Complaint was due on December 6 and Onward's response was due on December 12. By failing to timely respond, Roglieri and Prime have admitted the allegations in the Onward Complaint, including the allegations about their fraud and conversion.

43.     On February 15, 2023 (just a few days after it was supposed to make the first advance to Onward), Prime filed a federal court lawsuit in the United States District Court for the Northern District of New York against third-party Reign Financial International, Inc. (23-cv-207, NDNY) (the "Reign Lawsuit").

44.     According to the First Amended Complaint in the Reign Lawsuit, Prime took $20 million in October 2022 and wired it to a third party to use to "arbitrage international commercial private placement programs". *See* Exh. D at ¶ 12. Prime alleges that third party then stole the funds and has not returned them.[7]

45.     Upon information and belief, the $20 million that Prime sued for in the Reign Lawsuit was the same $20 million wired to it as described in the Onward Complaint.

---

[7] Reign International filed a motion to compel arbitration and no activity has happened in the Reign Lawsuit since September 2023 as the parties wait for the District Court to rule on the pending motion.

46.    This indicates that Prime was not acting as a "banker" at any time but was simply taking funds which were required to be held in escrow for interest payments and using them for its own investment purposes. It was also improperly taking the funds out of escrow and using them for purposes other than funding interest payments (on a loan it never made).

47.    Alternatively, Prime may have improperly used Onward's deposit funds to make a loan to a third party. Petitioning Creditors allege this in the alternative because of a February 24, 2023 entry on the Prime Commercial Facebook page which states that Prime "just funded Indigo Pharmaceutical for $20,000,000 for the construction of their new facility" in Las Vegas, Nevada:[8]

---

[8] Counsel for Compass has searched Clark County, Nevada online land records and has not located any real property listed in the name of Indigo Pharmaceutical.  There is significant concern that this deal (like the alleged loan transaction with ALUX Properties) is also entirely fictitious.



48.     Upon information and belief, prior to April 2023, Prime took deposits from numerous other borrowers with the promise of making them loans, but never made those loans and used the deposits for other purposes.

49.     For instance, on April 5, 2023, Truss Financial LLC filed a lawsuit against Prime in Kings County Supreme Court. The filed summons (attached as <u>Exhibit M</u>) states:

> The nature of this action is for breach of various intercreditor agreements between the parties.  Defendant has failed to return to Plaintiff the sum of $13,400,000.00 in accordance with the aforementioned agreements, causing a broad range of damages to Plaintiff, including but not limited to the loss of $13,400,000.00, loss of business opportunities and other consequential damages resulting from Defendant's breach and wrongful and deceitful conduct.

**E. Prime takes $22,714,750 in Interest Deposits from the Petitioning Creditors, Never Makes Them Loans and Fails to Return the Deposits**.

50.     Each of the Petitioning Creditors, like Onward and other victims described below, entered into agreements whereby Prime promised to provide loans. Each of the Petitioning Creditors wired multi-million dollar sums to Prime which were required to be held by Prime as deposits and used solely to fund interest payments on the loan, once Prime made such loans. Prime never made any loans to the Petitioning Creditors and has failed to return any of the deposits.

a.   Compass

51.     The details of Compass's dealings with Prime are set forth in the Declaration of Thomas F. Taft, Jr.

52.     Compass is the owner and developer of a parcel of commercial property in Charlotte, North Carolina. In early 2023, it was looking for an almost $80 million loan to build a multi-family apartment building.  Compass was introduced to Prime through a loan broker.

53.     Kimberly "Kimmy" Humphrey, the Executive Vice President of Prime (and a key associate of Roglieri) traveled to Charlotte and met in person with Compass officers, including touring the site for the multi-family build.[9]

54.     On March 27, 2023, Prime provided Compass with a "Commitment to Fund Letter" in which it promised to fund $75,725,000 "via a non-recourse, asset-backed Line

---

[9] Upon information and belief, Kimmy Humphrey is the sister of Prime's Chief Operating Officer Chris Snyder.

of Credit" with a term of 60 months and an interest rate of 7.5%. A true and correct copy

of that commitment letter is attached as Exhibit 1 to the Taft Declaration.

55.     The interest rate promised by Prime was attractive because the federal

reserve prime rate was at 8.0% at that time (as listed in the chart above).

56.     Compass (as borrower) then entered into an April 24, 2023 Development

Line of Credit with Prime (as lender), whereby Prime was to make a loan for $79,511,250

(the "Compass Prime Agreement"). A copy of the Compass Prime Agreement is attached

hereto as Exhibit 2 to the Taft Declaration (and is virtually identical to the Blackwater

Capital form which the Georgia Court held to be a "total fraud").

57.     The Compass Prime Agreement was signed by Kris Roglieri as CEO of

Prime.

58.     Section 10.12 of the Compass Prime Agreement states: "Lender hereby

represents and warrants to Borrower that it has the financial ability and wherewithal to fund

the LOC in the full amount of the Maximum Amount" (*i.e.* $79,511,250).

59.     Upon information and belief, this representation and warranty was fraudulent

at the time it was made, and Prime did not have the financial ability to fund $79,511,250

on the line of credit to Compass.

60.     Pursuant to the terms of the Compass Prime Agreement, Compass wired the

sum of $15,902,250 to Prime as an "ICA Payment" on April 27, 2023 (the "Compass

Deposit"). The Compass Deposit was to be held in an "Interest Credit Account" held by

Prime. The agreement specifically provided that "All credits to the Interest Credit Account

shall be used . . . for purposes of payment on interest payable on the Advances as and when

such interest payments are due and payable." Section 3.6. Said another way, the parties explicitly agreed that the Compass Deposit would be held by Prime and not used for any other purpose other than interest payments due on advances Prime made under the line of credit.

61.    Since April 27, 2023, Prime has had the Compass Deposit, but never advanced any funds or provided a line of credit.  On October 27, 2023, Compass demanded the return of its deposit.

62.    Roglieri and Prime have admitted orally and in writing on numerous occasions (both directly and through counsel) that Compass is entitled to the return of the Compass Deposit and that it was due to be returned no later than December 12, 2023. However, they have both failed to return the funds.  Copies of emails showing the promises by Roglieri and Prime are attached as Exhibit 3 to the Taft Declaration.

63.    Moreover, they have claimed that the funds are held at RBC Bank and have promised on multiple occasions to provide copies of bank account statements showing exactly where the Compass Deposit is held. However, they have failed to provide any such statements.

64.    Compass is forced to conclude that Prime never held the Compass Deposit as it was required to do. To the contrary, Compass is concerned that Prime may have converted the Compass Deposit and used it to pay other parties. For instance, Compass notes that the lawsuit of Truss Financial LLC for $13,400,000 was dismissed on May 22,

2023, not long after Compass wired its funds to Prime. That timing may be entirely coincidental, but the timing causes Compass grave concern.[10]

(b) <u>526 Murfreesboro</u>

65.     The dealings between 526 Murfressboro and Prime are described in a Declaration by Daniel Cosgrove, filed in its action against Prime filed in the United Stated District Court for the Middle District of Tennessee.  A copy of the Declaration is attached hereto as <u>Exhibit N</u>.

66.     On April 6, 2023, 526 Murfreesboro entered into a Development Line of Credit Agreement whereby Prime promised to provide a $17,250,000 line of credit for the development of a commercial property in Nashville, Tennessee (the "Murfreesboro Prime Agreement").

67.     A copy of the Murfreesboro Prime Agreement is attached to the Cosgrove Declaration (and is virtually identical to the Blackwater Capital form which the Georgia Court held to be a "total fraud").

68.     Pursuant to that agreement, 526 Murfreesboro wired the sum of $4,312,500 as an ICA Payment deposit to Prime. As with Compass, the wired ICA Payment was supposed to be held by Prime and not used for any purpose other than to fund interest payments once Prime made a loan to 526 Murfreesboro.

69.     Prime never made any loan to 526 Murfreesboro and has refused to return its deposit.  *See* Declaration of Michael G. Abelow, Esq. (attached hereto as <u>Exhibit O</u>). That

---

[10] On December 14, 2023, Compass sued Prime in the United States District Court for the Northern District of New York. However, Compass subsequently discovered Prime's fraud related to ALUX Properties and determined that the filing of this involuntary bankruptcy was necessary.

led to 526 Murfreesboro suing Prime in the United States District Court for the Middle District of Tennessee (case no. 23-cv-01239). A true and correct copy of the complaint filed in that action is attached hereto as Exhibit P.

(c) Newlight Technologies

70.     The dealings and correspondence between Newlight and Prime are detailed in the accompanying Declaration of Michael Collins.

71.     On May 23, 2023, Newlight entered into a Line of Credit Agreement whereby Prime promised to provide a line of credit loan in an aggregate principal amount of $13,125,000 to be funded in full within ninety (90) banking business days of execution (the "Newlight Prime Agreement"). See, Collins Declaration.

72.     Pursuant to that agreement, Newlight wired the sum of $2,500,000 as an ICA Payment deposit to Prime. As with Compass, the wired ICA Payment was supposed to be held by Prime and not used for any purpose other than to fund interest payments once Prime made a loan to Newlight. *Id*.

73.     Prime never made any loan to Newlight and Newlight demanded return of its deposit.  Prime has acknowledged its obligation to return its deposit, but has failed to do so. *Id*.

74.     Prime never made any loan to Newlight and has refused to return its deposit.

**E.  Other Creditors**

75.     Prime's pattern and practice of taking deposits from unsuspecting victims, not making loans and then failing to return the deposits (or only returning the deposits after being sued) has been ongoing for an extensive period of time. For instance, in addition to

the lawsuits described above, the following lawsuits / arbitration have been filed against Prime:

(a) *B&R Acquisition Partners v. Prime Capital Ventures* (JAMS arbitration) (filed in August 2023) (alleging $4,000,000 ICA payment for a purported $22,000,000 loan that was never made and the deposit never returned) (Prime was initially represented by Shepherd Mullin in that arbitration, but it withdrew from representation and, upon information and belief, no new counsel has appeared);

(b) *Camshaft CRE 1, LLC v. Prime Capital Ventures, LLC*, 2023-023173-CA-01 (Circuit Court, Miami-Dade County, Florida) (filed September 15, 2023) (complaint attached hereto as Exhibit Q) (alleging May 2023 payment of $13,400,000 ICA Payment to Prime and failure of Prime to return deposit).[11] According to the docket in that case, Prime retained Florida counsel to seek an extension of time to respond to that complaint through November 10, 2023. Prime has not filed any response to the complaint in that action and has therefore admitted the allegations therein.

(c) *The Lion Group DFW, LLC v. Prime Capital Ventures, LLC*, 23-DCV-341617 (Texas State Court - 146th Judicial District Court) (filed September 21, 2023) (believed to relate to a similar ICA deposit situation although pleadings have not been obtained and the lawsuit was dismissed, indicating that The Lion Group may have been paid) (copy of docket attached as Exhibit R.)

---

[11] Camshaft first sued Prime on July 14, 2023 in case 2023-019591-CA-01 in Miami-Dade County Circuit Court but took a voluntary dismissal and filed the currently pending lawsuit in September.

(d) *Sturm v. Prime Capital Ventures, LLC,* 23-cv-1033 (N.D.N.Y. - filed on August 22, 2023) (sought recovery of a $2,000,000 ICA Payment made in connection with promise of a $15,000,000 loan per an October 2022 Acquisition Line of Credit Agreement) (complaint attached hereto as <u>Exhibit S</u>). Prime did not retain counsel to defend the lawsuit and entry of default was entered against it on September 15, 2023. The lawsuit was dismissed on October 18, 2023 when Prime returned the $2,000,000 to Sturm.

76.     At the same time that Roglieri and Prime were taking deposit money from borrowers and not making loans, Roglieri was living a life of extreme luxury. This is highlighted by, among other things, a July 24, 2023 article published by Gentleman Avenue which list Kris Roglieri as the owner of a Maserati MC12 (copy attached as <u>Exhibit T</u>). Per the article, "The Maserati MC12 is worth between $2 to $2.5 million today" and there are only 62 such cars in the world. The article states:

> Besides his financial enterprises, Roglieri has an impressive collection of eclectic modified supercars housed at Team LoanSharks. The loudest SVJ, 3 Novitec N-Largos, and significantly modified AMGs are included, as well as of course the Maserati MC12. [12]

---

[12] It appears that Roglieri may hold his "supercars" collection in a New York limited liability company named FUPME, LLC. This appears to be the case based on a February 17, 2023 lawsuit which FUPME, LLC filed in Albany County Supreme Court related to Roglieri's attempt to buy a Mercedes-Benz AMG One Hypercar, Production Slot #197 for $2,344,440. *See FUPME, LLC v. Traveon Devonta Rogers. et. al.*, case no. 901648-23 (Albany County Supreme Court) at ¶ 11 (alleging that Roglieri is the "sole member and manager of FUPME, LLC") (copy of complaint attached hereto as <u>Exhibit U</u>. A detailed online video showing the many cars in that supercar collection can be viewed here: www.youtube.com/watch?v=Fm_p8upe_S8 and the cars are individually listed at exclusivecarregistry.com/collection/teamloansharks.

77.   The reference to "Team LoanSharks" appears to relate to Roglieri's Instagram handle, as he puts out messages under the handle "teamloansharks" and uses the following logo:



**ARGUMENT**

78.   Section 303(g) of the Bankruptcy Code provides, in relevant part:

> At any time after the commencement of an involuntary case under chapter 7 of this title but before an order for relief in the case, the court, on request of a party in interest, after notice to the debtor and a hearing, and if necessary to preserve the property of the estate or to prevent loss to the estate, may order the United States trustee to appoint an interim trustee under section 701 of this title to take possession of the property of the estate and to operate any business of the debtor.

79.   As the Code states, an interim trustee may be appointed if such appointment is "necessary to preserve the property of the estate or to prevent loss to the estate." While the remedy of appointment of an interim trustee during the gap period of an involuntary bankruptcy is a strong remedy (particularly when done on an emergency basis and shortened notice), its application in this case is entirely appropriate and essential.

80.   Regardless of any other facts, the evidence is clear and incontrovertible that Prime and Roglieri have been publicly lying for almost two years regarding making an

alleged $188,000,000 loan to ALUX Properties, even after the Georgia Superior Court held

that the Development Line of Credit Agreement to that company was a "total fraud". That

fact standing entirely alone is sufficient for the appointment of an interim trustee.

81.    Moreover, the following facts all weigh heavily in favor of the appointment

of an interim trustee:

(a)    Prime admits that it owes over $20 million in deposits back to

Petitioning Creditors and has failed to pay them;

(b) In addition to Petitioning Creditors, Prime appears to have failed

to repay numerous other creditor deposits, with Petitioning Creditors able to

identify at least $43,114,750 as follows:

- Compass-Charlotte - $15,902,250

- Camshaft - $12,400,000

- 526 Murfreesboro - $4,312,500

- Newlight Technologies - $2,500,000

- B&R Acquisition Partners (arbitration) - $4,000,000

- Onward Holdings - $4,000,000 (the remaining amount it has not

received)

(c) By failing to respond to the complaints filed by Onward and

Camshaft, Prime and Roglieri have admitted to not returning funds to other

creditors and engaging in fraud;

(d) Although Prime has been operating in New York since its

formation in 2021, it is has done so in violation of New York law since it has

never registered with the NY Secretary of State or obtained authority to do business. *See* N.Y. Law, Chapter 34, Article 8 Section 802 (requiring foreign LLCs to register to do business in NY);

(e) Prime is not carrying on any active business but is instead failing to respond to lawsuits filed against it across the country;

(f) Prime has admitted that it did not keep deposit funds segregated in ICA Accounts but used them for other purposes and therefore has not returned them;

(g) Prime has refused to provide copies of any account statements showing the deposit funds on deposit anywhere;

(h) Prime's has paid some amounts back to certain creditors, but has not paid others, raising the specter of a possible Ponzi scheme, or at least the preference of certain creditors over others;

(i) Prime's behavior as described herein has existed for over a year and for the majority of its existence, strongly indicating that Prime was established by Roglieri for fraudulent purposes from the outset; and

(j) Prime is solely owned and managed by Roglieri, so the impact of the appointment of an interim trustee will be limited and only serve to displace a single person, as contrasted to a company with multiple owners and managers.

82.    Without the appointment of an interim trustee, Petitioning Creditors have significant (and well-grounded) fears that any remaining assets of Prime will be dissipated.

Bankruptcy courts have appointed interim trustees to protect against the dissipation of estate assets, particularly when the debtor has engaged in wrongdoing. *See In re James Plaza Joint Venture,* 62 B.R. 959 (Bankr. S.D. Tex. 1986) (appointing interim trustee to preserve cash funds on deposit since absent appointment the funds would be dissipated); *In re The Centre for Management and Technology, Inc.*, 2007 WL 3197221 (Bankr. D. Md. 2007) (appointing interim trustee given evidence of "double financing scheme" by debtor); *In re Professional Accountants Referral Services, Inc.*, 142 B.R. 424 (Bankr. D. Colo. 1982) (appointing interim trustee when debtor's management had engaged in a "pattern of extraordinary financial gymnastics" related to debtor); *In re DiLorenzo*, 161 B.R. 752 n. 8 (Bankr. S.D.N.Y. 1993) (collecting cases in which interim trustees have been appointed during involuntary petition gap period).  Here, Roglieri and Prime's wrongdoing is clear (and in all likelihood criminal). An interim trustee is desperately needed to immediately uncover what is happening behind the scenes, to ensure that no other persons become victims of Prime and Roglieri, and to attempt to recover deposit funds for the benefit of Petitioning Creditors and other victims.

83.     Pursuant to 11 U.S.C. § 303(f), Petitioning Creditors request that the Court's order granting this Motion specifically provide that the debtor (including Roglieri, Kimmy Humphrey and any other person having authority to act on behalf of the debtor) no longer has any authority to operate Prime or to use, acquire, or dispose of any property of Prime, and shall immediately turn over all property and records to the interim trustee.

**WHEREFORE**, for the reasons stated herein and to be more fully discussed at the

hearing on the Emergency Motion, the Petitioning Creditors respectfully requests that the

Court grant the Motion and enter an order immediately appointing an interim trustee, and

granting such further relief as is just and proper.

**Dated:** Albany, New York
            December 19, 2023

                                                **NOLAN HELLER KAUFFMAN LLP**

                                        By:  /s/ Justin A. Heller
                                                Justin A. Heller, Esq.
                                                Matthew M. Zapala, Esq.
                                                *Attorneys for Petitioning Creditors*
                                                80 North Pearl Street, 11th Floor
                                                Albany, New York 12207
                                                (518) 449-3300