## UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| IN RE:<br><br>PRIME CAPITAL VENTURES, LLC,<br><br>Debtor. | Chapter 7<br><br>Case No. 23- __11302__ |

## DECLARATION OF MICHAEL COLLINS IN SUPPORT OF EMERGENCY MOTION OF PETITIONING CREDITORS FOR APPOINTMENT OF INTERIM TRUSTEE OVER PRIME CAPITAL VENTURES, LLC

1.     I, Michael Collins, hereby declare as follows:

2.     I am over 18 years of age, under no disability which would keep me from making this declaration, and have personal knowledge of the facts set forth herein based upon my own personal involvement.  I reside in San Clemente, California.

3.     I am the Chief Financial Officer of Newlight Technologies, Inc. ("Newlight"), one of the petitioning creditors in this case.  Newlight's innovative technology uses natural microorganisms to convert greenhouse gas into a natural biomaterial that can be used to form commercial products.

4.     In early 2023, Newlight was looking for a line of credit for  its business operations.  Therefore, on May 23, 2023, Newlight entered into a Line of Credit Agreement (the "Agreement"), whereby Prime Capital Ventures, LLC ("Prime") agreed to provide Newlight of a line of credit loan in an aggregate principal amount of up to a maximum of $13,125,000. A copy of the Agreement is attached hereto as Exhibit A.

5.     The Agreement was signed by Kris D. Roglieri as CEO of Prime.

6.      Under Section 10.12 of the Agreement, Prime "represent[ed] and warrant[ed] to [Newlight] that it ha[d] the financial ability and wherewithal to fund the LOC in the full amount of the Maximum Amount" (i.e., $13,125,000).

7.      Pursuant to Section 3.6 of the Agreement, and in reliance on Prime's representation that it could provide the requisite line of credit, Newlight wired the sum of $2,500,000 to Prime as an "ICA Payment" on May 24, 2023 (the "Deposit").  A copy of the Payment Details confirming the wire of $2,500,000 is attached as Exhibit B.

8.      Under Section 3.6 of the Agreement, Prime was charged with holding Newlight's Deposit in an "Interest Credit Account."  Absent default, Prime agreed that it "shall" use the funds only "for the purpose of payment of interest payable on the Advances as and when such interests payments are due and payable" under the line of credit.  Even in the event of default, permitted use of the amounts in the Interest Credit Account were extended only to "payment of any then outstanding principal of the Advances."  The Agreement did not permit use of Newlight's Deposit for any other purpose.

9.      Pursuant to Sections 2.1 and 7.1 of the Agreement, Prime agreed to fund the First Advance in the amount of $13,125,000 to Newlight by 90 banking business days following execution of the LOC.

10.     Prime did not advance any funds to Newlight under the terms of the LOC.  Thus, pursuant to Section 13.7 of the Agreement, Newlight sent Prime a Notice of Termination (the "Notice"), extinguishing the Agreement and demanding the full return of its Deposit from Prime.

11.     Per the Agreement, Prime was obligated to return the Deposit to Newlight within fifteen international business-banking days after receiving the Notice, by September 26, 2023.

12.     By October 12, 2023, having received no response from Prime to its Notice of Termination and follow-up calls, and still having not received return of its Deposit, Steven Petersen, Chief Legal Officer of Newlight, emailed Kimberly Humphrey, Prime's Vice President, copying me, and (1) reiterated Newlight's demand for return of its Deposit and (2) provided Ms. Humphrey with all the information necessary for Prime to initiate the return by either check or wire.

13.     Over the ensuing four weeks, Mr. Petersen, Newlight's outside counsel, and I made calls and sent correspondence to Mr. Roglieri and Ms. Humphrey of Prime, and to Prime's lead counsel, Ned Trombly of Barclay Damon LLP.  Despite regular follow-ups with Mr. Roglieri and Ms. Humphrey, it was not until November 9, 2023, that Mr. Roglieri responded to Mr. Petersen.  In response to emails demanding a wire transfer returning the Deposit, Mr. Roglieri stated that "[t]his is going to be initiated."  He therefore confirmed that Prime would process the return of the Deposit.

14.     Mr. Petersen responded the same day, and again provided the necessary wire information to Mr. Roglieri.  Mr. Petersen also advised Mr. Roglieri that Newlight's outside counsel would initiate collection actions if Newlight did not receive a wire confirmation by the close of business on November 15, 2023.  Despite many follow-ups, neither Mr. Roglieri nor Ms. Humphrey responded until November 29, 2023.

15.     On November 29, Ms. Humphrey explained that Prime was going to send over a document that needed to be signed by a Newlight party in order to initiate the wire transfer returning the Deposit.  Ms. Humphrey requested information to prepare the necessary forms.  Despite responding to Ms. Humphrey a number of times since then, Newlight has yet to receive the document Ms. Humphrey referenced.  A copy of the email chain of correspondence between Newlight on one hand, and Mr. Roglieri and Ms. Humphrey of Prime on the other is attached as <u>Exhibit C</u>.

16.     To date, Prime has failed to return Newlight's Deposit, despite its obligation to do so.

17.     I declare under penalty of perjury that the foregoing is true and correct. Executed this 18th day of December, 2023.

_____
Michael Collins