**UNITED STATES BANKRUPTCY COURT**
**FOR THE NORTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| IN RE:<br>PRIME CAPITAL VENTURES, LLC,<br>    Debtor. | Chapter 7<br>Case No. 23-11302 |

### MOTION OF PETITIONING CREDITORS TO DISMISS BANKRUPTCY CASE

Petitioning creditors Compass-Charlotte 1031, LLC ("Compass"), 526 Murfreesboro, LLC ("526 Murfreesboro") and Newlight Technologies, Inc. ("Newlight", and together with Compass and 526, the "Petitioning Creditors")) hereby move, pursuant to 11 U.S.C. §§ 105 and 303(j), for dismissal of this involuntary bankruptcy case (the "Motion").  Dismissal is sought because information obtained after the petition was filed, culminating in new information learned by Petitioning Creditors at the hearing held by the Court on Friday, January 5, 2024 at 2:00 p.m. - **namely that the Debtor's estate appears to only have at the most, approximately $360,000 in unencumbered cash**.  Meanwhile some $52 million is missing and was last in the hands of an entity not before this Court.

1.  The Petitioning Creditors filed this involuntary case in order to preserve assets of Prime Capital Ventures, LLC ("Prime").  The very limited information that the Interim Trustee has been able to obtain establishes that Prime has almost no assets.   In light of the information obtained as a result of filing the petition, the Petitioning Creditors have concluded that there is little to be gained from the time and expense of pursuing a Chapter 7 case against Prime, when this case is unlikely to result in any meaningful recovery of the millions of dollars they deposited with Prime.

1

2. No party disputes that Petitioning Creditors have been seriously harmed by Prime's failure to return their multi-million dollar ICA deposits (totaling $22,714,750) which were wired to Prime as follows:

Compass - April 2023 - $15,902,250[1]

526 Murfreesboro - April 2023 - $4,312,500

Newlight - May 2023 - $2,500,000

The Court has heard from numerous other creditors in similar dire circumstances.

3. Indeed, the principals of Prime (Kris Roglieri and Kimmy Humphries) repeated in numerous emails to Petitioning Creditors that the ICA deposits were being refunded at any moment or wires had already been sent. Mr. Roglieri and Ms. Humphries said that the ICA deposits were just held by some unnamed hedge fund (but in an account at RBC in Prime's name) and they were working to get those ICA deposits released so they could be returned to Petitioning Creditors. As just one example, in a December 11, 2023 text from Kris Roglieri to Compass, Mr. Roglieri stated: "Hello Tom we are waiting for the wire from rbc. This is for the full amount. It was done just waiting for it to come into our account here. I'm checking every hour." Samples of these communications between Prime and Compass, 526 Murfreesboro and Newlight are attached hereto as **Exhibits A**, **B** and **C**, respectively.

4. When the involuntary bankruptcy petition was filed on December 19, 2023, Petitioning Creditors had not been informed where their deposits were allegedly being held (although the Petitioning Creditors had asked for this information on multiple occassions). On December 21, 2023, this Court entered an order appointing an interim trustee (Doc. 13) which

---

[1] Indeed, Compass was forced to halt its ongoing multi-family construction project and terminate a contract and subs from the job site just a few days before Christmas because the deposit funds have not been returned. Other creditors have faced similar calamities.

included the requirement "that any person in possession of the Debtor's property and records (including without limitation, Prime Commercial Lending, LLC, Kris Roglieri, and Kimberly "Kimmy" Humphrey) shall immediately turnover such property and records to the Interim Trustee, as directed by the Interim Trustee." The Court also orally ordered Prime to provide information to Compass as to where Compass' and certain other creditors' ICA deposits were held.

5. On December 26, 2023, then counsel for Prime filed a letter with the Court (Doc. 16), reporting that Prime had advised counsel that "all of the ICA deposit funds, which are listed on schedule 1 attached are being held in Prime Capital's accounts . . . . A summary of these accounts and the balances are below:

| Prime Accounts | Total |
|---|---|
| RBC- Corporate: | $7,278,000 |
| RBC- Partnership: | $52,364,000 |
| Citi Bank: | $2,000,000 |
| Farmers: | $10,000 |
| Key Bank: | $2,000,000 |
|  |  |
|  |  |
| Total: | $61,652,000 |

6. On December 27, 2023, counsel for Prime provided to Compass (and other parties) a summary in which it identified a total of $59,690,084 in ICA deposits that Prime had received from third parties. A copy of that summary is attached as **Exhibit D**.[2] The summary sheet claimed that each of the Petitioning Creditors' deposits was held at RBC. On that summary, Prime then listed bank accounts in which it allegedly held $63,997,582 (apparently to try to prove that it was solvent). Prime also provided to Compass (and other parties) an alleged December 26, 2023 bank

---

[2] Ex. D is a copy of the summary sheet provided to Compass, and the names of the other borrowers were redacted. The first three listed loans are those of the Petitioning Creditors.

3

account statement from RBC purportedly showing an account at RBC holding over $52 million in the name of "BERONE CAPITAL FUND LP for benefit of: Prime Capital Ventures, LLC". A copy of that statement is attached hereto as **Exhibit E**.

7. Having finally received the name of the hedge fund allegedly holding funds at RBC, Petitioning Creditors were dismayed to discover that:

　　a. Berone Capital was only 2 years old, having been formed in 2021 (see Securities and Exchange Filing attached as **Exhibit F**);

　　b. Berone Capital was founded and run by Jeremiah Beguesse (graduated from college in 2014) and Fabian Stone (an individual appearing to have a background in the healthcare industry and with no financial company experience) (a copy of a printout from Berone Capital's website and the LinkedIn profiles of Mr. Beguesse and Mr. Stone are attached as **Exhibit G**); and

　　c. Berone Capital Fund LP's general partner was Berone Capital Partners LLC, an entity which was formed on September 10, 2021 as a Florida limited liability company and which was **voluntarily dissolved** on November 29, 2023 (some few weeks prior to the bankruptcy filing) (see printout from Florida Secretary of State website attached as **Exhibit H**).[3]

8. Compass brought this information to the attention of the interim trustee who subsequently took steps to try to confirm the Berone Capital account at RBC and that it contained $52 million as shown on the purported account statement given by Prime to Compass. The interim trustee then reported to the Court that RBC confirmed this was not an authentic RBC statement

---

[3] The Florida Secretary of State's website also lists a November 29, 2023 voluntary dissolution of Berone Capital Equity Partners LLC (subsequently called 405 Motorsports LLC).

and that there was nowhere near $52,000,000 in any Berone account with RBC . Prime informed the Court that the statement was given to it by Berone, but that Prime had been unable to reach Berone's principals for some time. In light of that information and that over $52 million was gone and unaccounted for, the Court entered a January 3, 2024 order (Doc. 33) in which it directed that:

> Berone Capital Fund, L.P., Berone Capital, LLC, Berone Capital Partners LLC or any affiliated entity disclose to the interim trustee by 9:30 a.m. eastern time on Thursday, January 4, 2023 the current value of Prime Capital Ventures, LLC interest in the Berone Capital Fund, L.P. or any other fund/investment held through Berone Capital, LLC, Berone Capital Partners LLC or any affiliate and provide independent corroboration (*e.g.* third party bank or financial institution account statements) of the existence and location of such funds.

9.   The interim trustee reported at a hearing on January 4, 2024 that he had received no response from Berone and had no idea whether any $52 million existed or had been stolen. In light of this noncompliance, the Court entered a January 4, 2024 Order to Show Cause (Doc. 46) directing Berone to appear at a hearing on January 9, 2024 and "show cause why the Court should not find it in contempt and issue a $1,000.00 a day sanction, as well as any other sanction the Court finds appropriate, until such information is provided."

10.  At a hearing on January 5, 2024, the interim trustee reported to the Court regarding the other bank accounts which Prime had listed on its summary report. Of those accounts, the interim trustee did locate an account at RBC in the name of Prime. While that account held over $7 million, the interim trustee reported that $6 million was pledged to RBC as collateral for a line of credit, which was fully drawn. The interim trustee also reported that all of the funds in that account were directly traceable to ER Tennessee, LLC, which asserted that its agreement required those funds to be held by Prime in trust and the RBC account was supposed to have been created solely for that purpose.

11. The interim trustee also reported that the KeyBank account that the Debtor represented had a $2 Million balance in fact had approximately $2,000. The Trustee estimated that of the nearly $64,000,000 in funds that Prime represented it had in its possession, he was only able to identify a total of a little over $360,000 in cash in those accounts.[4][5]

12. In sum, on December 27, 2023, Prime told Petitioning Creditors it had almost $64 million in cash to cover $60 million in ICA deposits from creditors. But by January 5, 2024, it became clear that Prime might have no more than $360,000 (or substantially less) in cash available for creditors.

13. With the disclosures by the interim trustee (coupled with the failure of Berone to respond and the voluntary dissolution of multiple Berone entities on November 29, 2023), Petitioning Creditors are confronted with two hard facts:

   a. the cash in the Prime estate is unlikely to be sufficient to pay even the resulting administrative expenses of a bankruptcy; and

   b. the entity apparently last in possession of the millions of ICA deposits is not before this Court (and every indication is that the Berone entities have no plan of appearing or further responding to the Court's orders).

14. As the Court has acknowledged, Prime's problems are not going away and will surely continue in another forum if this case is not in bankruptcy court. Petitioning Creditors agree. In light of the newly discovered information that any estate of Prime may well be administratively insolvent (absent discovery and return of the missing $52 million), Petitioning

---

[4] This figure includes $336,000 that the Debtor reported to exist in an IBKR account, which the interim trustee had not been able to verify.

[5] This figure also assumes the possibility of a determination that the approximately $1 million in funds in the RBC account are trust funds held for the benefit of ER Tennessee (a position which may have support based on the information currently available to Petitioning Creditors).

Creditors have no desire to further their losses in spending legal fees in a forum in which Berone and its principals are not parties.

15. Petitioning Creditors' goal in filing this case was simple - to obtain repayment of their $22,714,750 in ICA deposits. Based upon information from Prime and its principals (provided as recently as December 27, 2023), Petitioning Creditors believed that their ICA deposits were at RBC, either in an account in the name of Prime or in an account held for the benefit of Prime. That has now been shown to not be the case, and Prime has informed the Court and the parties that it does not know where those funds are. Accordingly, further pursuit of this involuntary bankruptcy does not appear to have a realistic chance of returning Petitioning Creditors' ICA deposits, and they believe their most likely chance for recovery is to dismiss this case and pursue relief in a forum where Berone can be made a party.

16. Accordingly, Petitioning Creditors respectfully request that the Court enter an order dismissing this case without prejudice pursuant to 11 U.S.C. § 303(j), including confirmation that the automatic stay is dissolved immediately upon entry of the order (see, 11 U.S.C. § 362(c)).

**Dated:** Albany, New York
January 8, 2024

**NOLAN HELLER KAUFFMAN LLP**

By: /s/ Justin A. Heller
Justin A. Heller, Esq.
Matthew M. Zapala, Esq.
*Attorneys for Petitioning Creditors*
80 North Pearl Street, 11th Floor
Albany, New York 12207
(518) 449-3300