**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF NEW YORK**

<table>
<tr><td>

*In re:*

PRIME CAPITAL VENTURES, LLC,

Debtor.

</td><td>

Chapter 7
Case No. 23-11302-rel

</td></tr>
</table>

*EMERGENCY* **MOTION FOR CLARIFICATION**
**REGARDING COURT'S RETENTION OF JURISDICTION OVER**
**ALL MATTERS PERTAINING TO THE $5,000,000 DEPOSIT**

1800 Park Avenue LLC ("**1800 Park**"), by its counsel, respectfully submits this emergency motion for an order on an expedited basis clarifying the Court's retention of jurisdiction over "[a]ll matters pertaining to the $5,000,000 deposit into the Alleged Debtor's KeyBank account no. xxxx2233," as ordered in the Court's *Order Granting Motion of Petitioning Creditors to Dismiss Case Pursuant to 11 U.S.C. §§ 105 and 303(j)*, signed and entered on January 9, 2024 (Doc. 87) (the "**Dismissal Order**"). 1800 Park seeks clarity from the Court that the jurisdiction retained over the issue of the $5,000,000 deposit does not preclude 1800 Park from bringing an action or commencing other legal process in another court or forum with respect to the deposit and the refusal of the Alleged Debtor, Prime Commercial Lending, LLC, Kris Roglieri, Kimberly "Kimmy" Humphrey, and others to return such funds to 1800 Park.

JURISDICTION

1.      The Court has jurisdiction over this application pursuant to 28 U.S.C. §§ 157(b) and 1334.

2.      Venue is proper before the Court pursuant to 28 U.S.C. § 1408.

3.      This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A).

BACKGROUND

4.    In October 2023, 1800 Park approached Prime Capital Ventures, LLC ("**Prime Capital**" or "**Alleged Debtor**") regarding a construction loan request to fund a line of credit for over $105 million. On October 20, 2023, Prime Capital delivered a "Terms and Contingent Letter of Intent" to 1800 Park for that line of credit. Under the term sheet, 1800 Park would have been required to fund an ICA deposit to Prime Capital in the amount of $26,277,562. Prime Capital subsequently issued to 1800 Park a "Commitment to Fund Letter" dated December 12, 2023, in which Prime Capital committed to fund the line of credit in the amount of $98,905,467 (the "**Commitment to Fund**"). The Commitment to Fund was executed by Kris Roglieri on behalf of Prime Capital, and was countersigned by Jeff Huston on December 12, 2023, on behalf of 1800 Park.

5.    On December 18, 2023, 1800 Park received draft loan documents that stated the lender was "Prime Commercial Lending, LLC" not Prime Capital. No explanation was provided for the change from Prime Capital to Prime Commercial Lending, LLC ("**PCL**") at the time the draft loan documents were provided. While unknown at the time, this involuntary bankruptcy petition was filed against Prime Capital on Tuesday, December 19, 2023.

6.    On Tuesday, December 19, 2023, at 11:22 a.m., Erik Martin (who has a signature block of Vice President, Prime Commercial Lending) sent an email in which he stated that "If we don't make this soft close happen this week, we may lose the deal altogether. The ICA will jump as well as the rate, and may require a whole new underwrite." 1800 Park did not want to lose the potential financing, so it negotiated that it would send a $5,000,000 initial deposit which would be held in trust and not used for any other purpose until such time as the parties could attempt to close the potential financing.

7.      On December 21, 2023, the President of 1800 Park, Jeffery Huston, received an email from Kimberly "Kimmy" Humphrey, a representative of Prime Capital and PCL, with a draft "Deposit Agreement" to govern the $5,000,000 deposit, which was drafted to be between 1800 Park and PCL. The Deposit Agreement attached wire instructions which said that 1800 Park should wire funds to an account at KeyBank allegedly held in the name of PCL. Counsel for 1800 Park revised the proposed Deposit Agreement to ensure that the $5,000,000 deposit from 1800 Park would be held in trust and not used for any other purpose. This was essential to 1800 Park as it had not reached any final agreement with Prime Capital or PCL regarding a line of credit. On December 22, 2023, the Deposit Agreement was executed by Kris Roglieri on behalf of PCL and by 1800 Park. A true and correct copy of the Deposit Agreement is attached as Exhibit 1.

8.      The Deposit Agreement specifically states:

> The Lender [Prime Commercial Lending, LLC] hereby acknowledges receipt of such funds and agrees to hold the Deposit Amount in a separate and distinct account for Borrower, subject to the terms and conditions of this Agreement.  The Deposit Amount should be **held as a trust fund** and shall not be subject to any lien, attachment, trustee process or any other judicial process of any creditor of any party hereto.

Deposit Agreement at 2 [Sec. 2.a.] (Emphasis added). In accordance with the Deposit Agreement, 1800 Park wired $5,000,000 to the KeyBank account provided by Ms. Humphrey on December 22, 2023.

9.      The existence of this case and the *Order Appointing Interim Chapter 7 Trustee* entered December 21, 2023, were never disclosed to 1800 Park until after the $5,000,000 deposit was made.

10.     1800 Park demanded that its $5,000,000 be returned, which was formalized in a letter from counsel for 1800 Park, dated January 3, 2024, sent to PCL pursuant to the notice provisions of the Deposit Agreement (the "**Demand Letter**"). Scott Diberardinis of PCL

acknowledged receipt of the Demand Letter in an email received at 4:30pm MST on January 3, 2024.

11.    1800 Park has subsequently obtained copies of KeyBank account statements related to the $5,000,000 deposit. The first statement (account no. xxxx2233) was not in the name of PCL as falsely represented by Ms. Humphrey and Mr. Roglieri. Rather, it was in the name of Prime Capital. The KeyBank account statement shows that the Prime Capital account no. xxxx2233 had a $1,923.66 account balance on December 22, 2023 prior to the $5,000,000 deposit. The statement shows 1800 Park's $5,000,000 wired in. That same statement then shows that exact amount being transferred out with an internet transfer on December 22, 2023, with the full $5,000,000 being transferred to another KeyBank account ending in xxxx4465.

12.    1800 Park also obtained a copy of the December 2023 bank account statement for KeyBank account no. xxxx4465. That account is in the name of PCL. The ending balance in this account for the day prior to the internet transfer of the $5,000,000 was $57,045.90. The KeyBank account statement shows that immediately after the $5,000,000 was transferred over to PCL's account, the funds were dissipated. Among other things, portions of 1800 Park's $5,000,000 deposit were wired to the law firms which have appeared to represent Prime Capital in its bankruptcy and now in the civil lawsuit pending in the US District Court for the Northern District of New York (case no. 1:24-cv-00055-MAD-DJS; the "**District Court Proceeding**"). That same statement shows 1800 Park's $5,000,000 trust funds being used for the following unauthorized purposes: (a)  On December 26, 2023, $84,000 wired to "Wrist Afficionad", which upon information and belief is Wrist Aficionado, a luxury watch seller, according to its website wristaficionado.com; and (b) On December 26, 2023, $101,000 wired to "Xo Global, Llc", which

upon information and belief is XO Global, LLC, a private air charter broker operating under the brand XO.

13.     PCL's use of the 1800 Park trust funds for any purpose was directly contrary to the terms of the Deposit Agreement which specified that those funds were "held as a trust fund and shall not be subject to any lien, attachment, trustee process or any other judicial process of any creditor of any party hereto."

14.     Despite repeated demands on representatives of PCL, Prime Capital and Prime Capital's counsel, no money has been returned to 1800 Park. Based upon a review of the KeyBank account statements, it is evident that neither Prime Capital nor PCL ever held the 1800 Park $5,000,000 deposit in trust and instead have used those trust funds to pay the lawyers litigating for Prime Capital in this bankruptcy case and the District Court Proceeding (among other uses).

15.     On January 10, 2024, on the motion of the petitioning creditors, the Court entered the Dismissal Order dismissing this case but expressly reserved jurisdiction over a number of items, including "[a]ll matters pertaining to the $5,000,000 deposit into the Alleged Debtor's KeyBank account no. xxxx2233."

16.     On January 12, 2024, the District Court entered an order in the District Court Proceeding appointing Paul Levine as temporary receiver over Prime Capital and others. On January 19, 2024, Mr. Levine as receiver filed his *First Report of Temporary Receiver* in the District Court Proceeding in which he detailed his efforts to obtain information and records related to the defendants in that case. That report was also attached to Mr. Levine's Letter filed in this case on January 22, 2024 (Doc. 113). Subsequently, on January 26, 2024, Mr. Levine filed his *Second Report of Temporary Receiver* in the District Court Proceeding, which detailed Prime Capital's failure to comply with his requests for records and information. A copy of the *Second*

*Report of Temporary Receiver* filed in the District Court Proceeding is attached hereto as <u>Exhibit</u> <u>2</u>. Mr. Levine filed an *Amended Second Report of Temporary Receiver* later that same day, which is attached as <u>Exhibit 3</u>.

<u>REQUESTED RELIEF</u>

17.     1800 Park seeks recovery of its $5,000,000. Based on the information obtained to date, it appears that Prime Capital, PCL, and its representatives are actively working to dissipate assets, including the deposit. Given that this bankruptcy case has been dismissed, the limited jurisdiction of bankruptcy courts, and the speed at which assets are being dissipated, 1800 Park may need to take immediate action in another court or forum in order to protect its interests.

18.     To that end, 1800 Park seeks an order from this Court, on an expedited basis, amending the Dismissal Order to clarify that nothing therein prohibits 1800 Park from bringing an action or commencing other legal process in another court or forum with respect to the deposit and the refusal of Prime Capital, PCL, Mr. Roglieri, Ms. Humphrey, and others to return such funds to 1800 Park.

19.     1800 Park's request that the Court enter the order requested on an expedited basis is supported by good cause in light of the facts described in this motion, including but not limited to Mr. Levine's reports and the record in this case.

20.     Undersigned counsel has been in contact with Assistant US Trustee Lisa Penpraze, who confirmed that the US Trustee's Office consents to the relief requested in this motion.

/./../

/./../

/./../

/./../

Dated: January 31, 2024

**CARPENTER, HAZLEWOOD, DELGADO & BOLEN LLP**

By: _____

       Chad P. Miesen, Esq.
       1400 E. Southern Avenue, Suite 400
       Tempe, Arizona 85282
       (480) 427-2800
       Email: chad@carpenterhazlewood.com
       *Attorney for 1800 Park Avenue LLC*