## UNITED STATES COURT OF APPEALS FOR THE SECOND CIRCUIT

**Thurgood Marshall U.S. Courthouse  40 Foley Square, New York, NY 10007 Telephone: 212-857-8500**

### MOTION INFORMATION STATEMENT

Docket Number(s): 24-0264 _____     _____ Caption [use short title]

Motion for: stay pending appeal and motion for interim

stay while motion for stay is pending

Set forth below precise, complete statement of relief sought:

Prime Capital moves for a mandatory stay under Coinbase, Inc. v.

Bielski, 599 U.S. 736 (2023), and 11 U.S.C. Section 362(a)(1) as well          Compass-Charlotte 1031, LLC v. Prime Capital Ventures, LLC

as a discretionary stay under Fed. R. App. P. 8(a).  In addition,

Prime Capital seeks an interim stay while the motion for a stay

is pending before this Court.

MOVING PARTY: Prime Capital Ventures, LLC          OPPOSING PARTY: Compass-Charlotte1031, LLC

☐ Plaintiff     ☑ Defendant

☑ Appellant/Petitioner     ☐ Appellee/Respondent

MOVING ATTORNEY: Pieter H.B. Van Tol III          OPPOSING ATTORNEY: Christopher V. Fenlon

[name of attorney, with firm, address, phone number and e-mail]

Hogan Lovells US LLP, 590 Madison Avenue          Hinckley Allen & Snyder, LLP, 30 South Pearl Street, Suite 901

New York, NY 10017, 212-918-3000          Albany, NY 12207, 518-396-3100

pieter.vantol@hoganlovells.com          cfenlon@hinckleyallen.com

Court- Judge/ Agency appealed from: Northern District of New York, Honorable Mae A. D'Agostino

**Please check appropriate boxes:**

Has movant notified opposing counsel (required by Local Rule 27.1):
☑ Yes   ☐ No (explain): _____

Opposing counsel's position on motion:
☐ Unopposed ☑ Opposed ☐ Don't Know
Does opposing counsel intend to file a response:
☑ Yes   ☐ No   ☐ Don't Know

Is oral argument on motion requested?   ☐ Yes ☑ No (requests for oral argument will not necessarily be granted)

Has argument date of appeal been set?   ☐ Yes ☑ No If yes, enter date: _____

Signature of Moving Attorney:

_Pieter Van Tol_____ Date: March 27, 2024   Service by: ☑ CM/ECF   ☐ Other [Attach proof of service]

**FOR EMERGENCY MOTIONS, MOTIONS FOR STAYS AND INJUNCTIONS PENDING APPEAL:**

Has this request for relief been made below?   ☑ Yes ☐ No
Has this relief been previously sought in this court?   ☐ Yes ☑ No
Requested return date and explanation of emergency: _____

If the Court grants the interim stay, the motion for a stay should be heard on a regular schedule.  If the

Court denies the interim stay, Prime Capital respectfully requests that the Court order Compass to

respond to the stay motion in 7 days or less.

Form T-1080 (rev.12-13)

# 24-0264-cv

# United States Court of Appeals
### *for the*
# Second Circuit

_____

COMPASS-CHARLOTTE 1031, LLC,

PLAINTIFF-APPELLEE,

– V. –

PRIME CAPITAL VENTURES, LLC,

DEFENDANT-APPELLANT,

BERONE CAPITAL FUND, LP, BERONE CAPITAL PARTNERS LLC,
BERONE CAPITAL LLC, BERONE CAPITAL EQUITY FUND I, LP,
405 MOTORSPORTS LLC, FORMERLY KNOWN AS BERONE CAPITAL
EQUITY PARTNERS LLC,

DEFENDANTS.

_____

### DEFENDANT-APPELLANT PRIME CAPITAL'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION FOR STAY OF DISTRICT COURT'S ORDER APPOINTING RECEIVER

*(Counsel listed on next page)*

Case: 24-264   03/27/2024   DktEntry: 28.1   Page 201 of 228

Case 23-11302-1-rel   Doc 155-1   Filed 03/27/24   Entered 03/27/24 08:44:58   Desc
Memorandum of law in support of the stay motion   Page 3 of 30

HOGAN LOVELLS US LLP
Pieter Van Tol
Peter Bautz
390 Madison Avenue
New York, NY  10017
Tel: (212) 918-3000
Fax: (212) 918-3100
pieter.vantol@hoganlovells.com
peter.bautz@hoganlovells.com

*Attorneys for Defendant-Appellant*

Case: 24-264  03/27/2024  DktEntry: 28.1  Page 202 of 228

Case 23-11302-1-rel    Doc 155-1    Filed 03/27/24    Entered 03/27/24 08:44:58    Desc
Memorandum of law in support of the stay motion    Page 4 of 30

# <u>TABLE OF CONTENTS</u>

**Page**

PRELIMINARY STATEMENT ...........................................................................1

BACKGROUND ..............................................................................................4

I.      Key Terms of Contract at Issue .............................................................4

II.     Procedural History.................................................................................6

         A.     Receivership Motion and Expedited Discovery ........................6

         B.     Interim Expedited Discovery .....................................................7

         C.     Prime Capital Initiates Arbitration............................................8

         D.     Memorandum and Order and Immediate Aftermath .................9

         E.     Litigation and Discovery Post-Dating Prime Capital's
                Appeal ......................................................................................10

         F.     March 19  Order.......................................................................11

ARGUMENT ..................................................................................................12

I.      Applicable Legal Standards .................................................................12

         A.     Mandatory Stay for Denials of Motions to Compel
                Arbitration................................................................................12

          B.     Four-Factor Analysis for Discretionary Stay............................13

II.     The Court Should Stay the Receivership Order Pursuant to
        *Coinbase* and/or the Automatic Stay Provisions of the
        Bankruptcy Code .................................................................................13

         A.     *Coinbase* Applies Here ...........................................................13

         B.     The Automatic Stay Bars Any Proceedings Against
                Prime Capital............................................................................14

III.    In the Alternative, the Court Should Issue a Discretionary Stay ........17

         A.     Prime Capital Has a Strong Likelihood of Success.................17

         B.     Prime Capital Will Suffer Irreparable Harm in the
                Absence of a Stay....................................................................18

         C.     Compass Would Not Suffer Substantial Injury if a Stay
                Were Issued...............................................................................20

         D.     A Stay Would Be in the Public Interest....................................21

i

IV.   The Court Should Grant an Interim Stay While It Is Deciding
the Motion ............................................................................................21

CONCLUSION..........................................................................................................22

CERTIFICATE OF COMPLIANCE WITH RULE 27(d) ......................................23

\\4165-9927-3295  v2

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Coinbase, Inc. v. Bielski*,
  599 U.S. 736 (2023) ..................................................................................2, 12

*Cortes v. Juquila Mexican Cuisine Corp.*,
  2020 WL 13550200 (E.D.N.Y. July 20, 2020) ..................................................15

*Cutler v. 65 Sec. Plan*,
  831 F. Supp. 1008 (E.D.N.Y. 1993).......................................................................19

*Fed. Home Loan Mortg. Corp. v. Spark Tarrytown, Inc.*,
  813 F. Supp. 234 (S.D.N.Y. 1993)..........................................................................19

*Grupo Mexicano de Desarrollo, S.A. v. Alliance Bond Fund, Inc.*,
  527 U.S. 308 (1999) .............................................................................................17

*Insussary v. Adminstaff Companies, Inc.*,
  1999 WL 305102 (S.D.N.Y. May 14, 1999).........................................................19

*John E. Andrus Mem'l, Inc. v. Daines*,
  600 F. Supp. 2d 563 (S.D.N.Y. 2009)....................................................................20

*Johnson Controls, Inc. v. A.P.T. Critical Sys., Inc.*,
  323 F. Supp. 2d 525 (S.D.N.Y. 2004).....................................................................20

*Le Metier Beauty Inv. Partners LLC v. Metier Tribeca, LLC*,
  2014 WL 4783008 (S.D.N.Y. Sept. 25, 2014) ......................................................16

*M.E.S., Inc. v. M.J. Favorito Elec., Inc.*,
  2010 WL 959604 (E.D.N.Y. Mar. 15, 2010) .........................................................15

*Marmet Health Care Center, Inc. v. Brown*,
  565 U.S. 530, 533 (2012) .....................................................................................21

*Nam v. Permanent Mission of Rep. of Korea*,
  2023 WL 2456646 (S.D.N.Y. Mar. 10, 2023) ......................................................21

*Ng v. Adler*,
  518 B.R. 228 (E.D.N.Y. 2014)...............................................................................15

*Nken v. Holder*,
  556 U.S. 418 (2009) ...........................................................................................2, 4

*Noel Pane v. City of Greenburgh*,
  2012 WL 12886971 (S.D.N.Y. March 21, 2012)...................................................21

iii

*Plummer v. Quinn*,
  2008 WL 383507 (S.D.N.Y. Feb. 12, 2008) ......................................................21

*Queenie, Ltd. v. Nygard Int'l*,
  321 F.3d 282 (2d Cir. 2003) ..............................................................................14

*Regeneron Pharms., Inc. v. U.S. Dep't of Health & Hum. Servs.*,
  510 F. Supp. 3d 29 (S.D.N.Y. 2020) ............................................................ 19-20

*Register.com, Inc. v. Verio, Inc.*,
  356 F.3d 393 (2d Cir. 2004) ..............................................................................19

*Tailored Fund Cap LLC v. RWDY, Inc.*,
  2020 WL 6343307 (N.D.N.Y. Oct. 29, 2020)....................................................16

*Thapa v. Gonzales*,
  460 F.3d 323 (2d Cir. 2006) ..............................................................................13

*U.S. Bank Nat. Ass'n v. Nesbitt Bellevue Prop. LLC*,
  2012 WL 2033548 (S.D.N.Y. June 5, 2012)................................................ 18-19

*Uniformed Fire Officers Ass'n v. de Blasio*,
  973 F.3d 41 (2d Cir. 2020) ................................................................................13

*Xue Hui Zhang v. Ichiban Grp., LLC*,
  2018 WL 3597632 (N.D.N.Y. July 26, 2018)....................................................16

**Statutes**

11 U.S.C. § 362(a)(1)................................................................................................2

**Rules**

Fed. R. App. P. 8(a) .................................................................................................1

Fed. R. App. P. 27....................................................................................................1

Fed. R. Civ. P. 62(a)...............................................................................................11

Fed. R. Civ. P. 62(c).......................................................................................... 10, 11

Local Rule 27.1 ........................................................................................................1

\\4165-9927-3295  v2

Defendant-Appellant Prime Capital Ventures, LLC ("Prime Capital") respectfully submits this memorandum of law, along with the Declaration of Pieter Van Tol ("Van Tol Decl."), in support of its motion (the "Motion"), pursuant to Fed. R. App. P. 8(a), Fed. R. App. P. 27 and Local Rule 27.1, for a stay pending appeal from the Memorandum-Decision and Order dated January 24, 2024 (the "Memorandum and Order") (Van Tol Decl., **Exhibit 1**) by the Honorable Mae A. D'Agostino (the "District Court") granting a motion (the "Receivership Motion") by Plaintiff-Appellee Compass-Charlotte 1031, LLC ("Compass") for the appointment of a receiver (the "Receiver").  Prime Capital has also moved for an interim stay of the Memorandum and Order pending the Court's determination of the Motion.[1]

## PRELIMINARY STATEMENT

A stay in this case is mandatory, for two reasons:

*First*, the District Court has effectively vitiated Prime Capital's undisputed arbitral rights by appointing the Receiver and refusing to grant Prime Capital's motion to compel arbitration and dismiss the underlying action.  Specifically, the District Court (a) ruled on the merits of Compass' claims and will be deciding third-party claims by the Receiver that similarly involve the merits (even though only the arbitrator may determine those matters); (b) has allowed Compass and the Receiver

---

[1]  Citations with the prefix "A" and "CA" below refer to the Joint Appendix and Confidential Appendix (for documents filed under seal), respectively.  Citations to "Dkt. No." are to the District Court docket.

to take expansive discovery, contrary to the limitations in the parties' arbitration agreement (the "Arbitration Agreement"); and (c) has not prevented—through Prime Capital's requested order compelling arbitration—Compass and the Receiver from threatening to derail the arbitration. In *Coinbase, Inc. v. Bielski*, 599 U.S. 736 (2023), the U.S. Supreme Court expressly prohibited such interference with arbitral rights while an appeal is pending. *Coinbase* requires a stay here.

*Second*, the automatic stay provisions in 11 U.S.C. § 362(a)(1) bar the continuation of the receivership. Prime Capital is wholly owned by Kris Roglieri, and he filed for chapter 11 bankruptcy on February 15, 2024. Under this Court's precedent, the stay in Mr. Roglieri's bankruptcy extends to Prime Capital and the other corporations that Mr. Roglieri owns.

Moreover, even if a stay is not required, the Court should grant a discretionary stay. The Supreme Court has held that the two "most critical" factors for a stay are (1) the movant's likelihood of success on the merits; and (2) irreparable harm to the movant in the absence of a stay. *Nken v. Holder*, 556 U.S. 418, 434 (2009). Here, Prime Capital has a strong likelihood of success on the merits of its appeal, and a receivership will continue to have a devastating impact on Prime Capital.

*First*, the Receiver's appointment (a) violated the Arbitration Agreement; and (b) was not justified under the "clear showing" standard for receiverships. The Arbitration Agreement does not (in contrast to some agreements) specifically allow

\\4165-9927-3295 v2

for receiverships in connection with arbitration. And, while the Arbitration Agreement states that the parties may seek "provisional remedies" in court, those remedies must be "in aid of arbitration." In this case, however, the receivership has interfered with Prime Capital's bargained-for arbitral rights.

In addition, Compass did does not satisfy the six-factor test for the drastic remedy of receivership. Most importantly, Compass asserts legal claims only and seeks money damages against Prime Capital, but it has no secured interest in Prime Capital's property. Compass freely admits that it sought a receiver so it could freeze assets for the payment of any future money judgment. However, precedent from the Supreme Court expressly bars such a use of equitable relief, including receivership. Compass also cannot show that it would be irreparably injured in the absence of a receivership because it has recourse to money damages, including damages from the non-Prime Capital defendants. Finally, Compass' claim sounds in breach of contract and Compass has not shown that Prime Capital engaged in fraudulent conduct justifying a receivership. To the contrary, the evidence demonstrates that Defendant Berone Capital Fund LP and related entities ("Berone") defrauded Prime Capital.

*Second*, Prime Capital would suffer significant irreparable harm in the absence of a stay. Receiverships divest defendants of their property and control over their business, which is inherently destructive and cannot be remedied through damages. This Court has held that the type of injury resulting from a receivership,

\\4165-9927-3295  v2

which includes a loss of business relationship/opportunities and good will, as well as reputational damage, constitutes irreparable harm. The longer the receivership continues, the greater the irreparable harm will be.

The final two factors in the stay analysis—*i.e.*, whether the non-movant would suffer a "substantial injury" from a stay and the public interest, *id.* at 434—similarly weigh heavily in favor of a stay pending appeal. A stay would not result in "substantial injury" to Compass. Indeed, there would be no injury to Compass because it was barred from seeking a receivership in the first place under these circumstances, and it could still move forward with its damages claims in arbitration. A stay would also serve the public interest because there is a strong public policy favoring arbitration, and a stay would help protect Prime Capital's arbitral rights.

Prime Capital also requests an interim stay while the Motion is pending because the Receiver has threatened to sell Prime Capital's assets and has wrongfully sought to take control over Prime Capital's legal affairs, including its effort to collect damages for a wrongfully filed involuntary bankruptcy proceeding.

The Court, therefore, should grant an interim stay and a stay pending appeal.

## **BACKGROUND**

### I.    **Key Terms of Contract at Issue**

Prime Capital provided borrowers with access to an asset-backed line of credit. This case involves a dispute between Prime Capital and a borrower,

\\4165-9927-3295  v2

Case: 24-264  03/27/2024  DktEntry: 28.1  Page 210 of 228

Case 23-11302-1-rel   Doc 155-1   Filed 03/27/24   Entered 03/27/24 08:44:58   Desc
Memorandum of law in support of the stay motion   Page 12 of 30

Compass, in relation to the Development Line of Credit Agreement dated April 24, 2023 (the "Compass LOC Agreement"), under which Prime Capital agreed to give Compass access to credit in the amount of approximately $80 million (if certain closing conditions were met).  (*See* A525.)  As part of the transaction, Compass paid Prime Capital a deposit of approximately $15.9 million (known as an "ICA Payment").  (A55, ¶ 130.)  Among other things, Compass has alleged that its ICA Payment (the "Compass ICA Payment") should have been held in a segregated account.  (A56, ¶ 130.)  The Compass LOC Agreement, however, did <u>not</u> require Prime Capital to hold the Compass ICA Payment in such an account.  Instead, it was sufficient that Prime Capital accounted for the Compass ICA Payment on its books and records with a credit, and had the ability to repay the Compass ICA Payment, if necessary.  (A1180, ¶ 8.)

The Compass LOC Agreement states that all disputes between Prime Capital and Compass are subject to the very broad and binding Arbitration Agreement:

> **Section 13.8  <u>Binding Arbitration</u>**.  Any dispute, claim or controversy arising out of or relating to this Agreement, or the breach, termination, enforcement, interpretation or validity thereof, including the determination of the scope or applicability of this agreement to arbitrate, shall be determined by binding arbitration in Albany County, New York, before one arbitrator.

(A552, § 13.8.)

The Arbitration Agreement also imposes strict limitations on document requests, depositions and discovery generally. (*Id.*)  In addition, it allows for very

\\4165-9927-3295  v2

limited recourse to the courts, stating that the parties may seek "provisional remedies in aid of arbitration from a court of appropriate jurisdiction." (*Id.*)

## II.   Procedural History

### A.   Receivership Motion and Expedited Discovery

On January 12, 2024, Compass filed the Receivership Motion, seeking the appointment of the Receiver and expedited discovery (including an interim appointment and interim expedited discovery). (*See* Dkt. No. 6.) Compass admitted that it sought the receivership to secure assets for the payment of a future money judgment in connection with its claim for breach of contract. Compass stated that a receiver would help it preserve "its ability to recover its contractually-entitled ICA payment." (*Id.*, 9-10; emphasis added.) The supporting declaration from Compass' counsel similarly refers to the need for a receiver to preserve assets and "Plaintiff's ability to recover on the merits of its claims," *i.e.*, the money damages sought in the Complaint. (A768, ¶ 8; *see also id.*, ¶ 9 ("[G]ood and sufficient cause exists to proceed by Order to Show Cause to protect Plaintiff's future judgment."); emphasis added.) In seeking expedited discovery, Compass likewise stated that it was necessary to assist the receiver in locating assets and to prevent any judgment by Compass from being rendered uncollectible. (*See* Dkt. No. 6, 13-14.) The Receivership Motion omitted any mention of the Arbitration Agreement.

\\4165-9927-3295  v2

Case: 24-264    03/27/2024    DktEntry: 28.1    Page 212 of 228

Case 23-11302-1-rel    Doc 155-1    Filed 03/27/24    Entered 03/27/24 08:44:58    Desc
Memorandum of law in support of the stay motion    Page 14 of 30

On January 12, 2024, the District Court granted the interim relief on an *ex parte* basis.  (*See* A7-8 (Dkt. No. 8); A776.)  The District Court also set January 22, 2024 as the hearing date on the issue of whether the Receiver would be appointed on a permanent basis.  (*Id.*)  On January 16, 2024, Prime Capital filed an emergency motion to vacate the Receiver's interim appointment and expedited discovery, dismiss the Complaint, and compel arbitration.  (*See* Dkt. No. 12.)

### B.    Interim Expedited Discovery

On January 13, 2024 (*i.e.*, three days before Prime Capital filed its motion to vacate and for related relief), Compass began issuing numerous subpoenas to Prime Capital's banks with immediate response dates, all in violation of the discovery limitations in the Arbitration Agreement.  (*See* A934-96.)  Many of the banks responded to the subpoenas, and they produced documents over the course of the week of January 15, 2024.  (*See* CA1.)

The documents regarding Berone's bank accounts revealed that it defrauded Prime Capital.  In connection with its line of credit business, Prime Capital relied on funding from hedge funds and, in October 2022, it had contributed $20 million for investment by Berone.  (A1891.)  Various documents executed by Prime Capital with Berone barred it from transferring Prime Capital's $20 million contribution or using it for any purpose other than investment.  (*See* A1889-90.)  Prime Capital,

7

therefore, insisted that Berone provide periodic statements showing that the $20 million was still in a Royal Bank of Canada ("RBC") account.

Those statements, however, turned out to be forgeries, which Prime Capital only learned in mid-January 2024 when it received the documents produced by RBC. Around the same time, Prime Capital also discovered from those (and other) documents that Berone had transferred most of the $20 million from the RBC account without Prime Capital's knowledge or permission. A letter from Prime Capital's counsel to the Receiver, dated February 13, 2024, spells out Berone's fraud and wrongful diversion of assets in detail. (*See* A1884-2016.)

### C. Prime Capital Initiates Arbitration

At the January 22, 2024 hearing, Compass informed the District Court that it does not dispute the validity of the Arbitration Agreement. (A1202:24-A1203:6.) However, Compass also stated that the right to arbitration is waivable and that the Receiver could decide not to pursue it. (A1203:7-A1204:19.) Compass repeated this position in discussions with Prime Capital. (*See* A1246-47; A1252.)

On January 24, 2024, Prime Capital filed an arbitration demand. (*See* A1246-47.)[2] Neither Compass nor the Receiver has confirmed that it is solely Prime Capital's decision whether the arbitration will continue. The Receiver has taken the

---

[2] In the same letter advising the District Court that it had initiated arbitration, Prime Capital renewed its request for a dismissal of the underlying action. (*Id.*)

Case: 24-264   03/27/2024   DktEntry: 28.1   Page 214 of 228

Case 23-11302-1-rel   Doc 155-1   Filed 03/27/24   Entered 03/27/24 08:44:58   Desc
Memorandum of law in support of the stay motion   Page 16 of 30

view that his powers are broad, and they include the direction of Prime Capital's legal affairs. The Receiver, for example, filed pleadings and supporting papers on Prime Capital's behalf in the underlying action, and has attempted to take over Prime Capital's defense in other litigation. *See infra*, 10, 21-22.

### D.   Memorandum and Order and Immediate Aftermath

In the Memorandum and Order, the District Court appointed the Receiver permanently and ordered that the ongoing, expedited discovery should continue. (*See* Van Tol Decl., Ex. 1, 21-22.) It did not decide Prime Capital's pending motion to dismiss and compel arbitration. (*Id.*, 2 n.1.) The District Court also stated that the parties could seek a stay of expedited discovery during the pendency of the motion to dismiss/compel. (*Id.*)

On January 25, 2024, Prime Capital moved for such a stay and noted that Compass had engaged in burdensome discovery (including sixteen subpoenas) in violation in the Arbitration Agreement's limitations. (A1254-56.) Tellingly, the Receiver opposed the stay motion. (A1257.)

On January 26, 2024, Prime Capital filed the Notice of Appeal. (A1258.) Thereafter, on January 29, 2024, the District Court entered a text order (the "January 29 Order") staying discovery during the appeal's pendency. (A1288.) The District Court also noted that Prime Capital's appeal did not automatically stay the

9

Case: 24-264  03/27/2024  DktEntry: 28.1  Page 215 of 228

Case 23-11302-1-rel  Doc 155-1  Filed 03/27/24  Entered 03/27/24 08:44:58  Desc
Memorandum of law in support of the stay motion  Page 17 of 30

Receiver's appointment. (*Id.* (citing Fed. R. Civ. P. 62(c)).) That same day, Prime Capital moved to stay the Receiver's appointment pending appeal. (A1289-90.)

### E.    Litigation and Discovery Post-Dating Prime Capital's Appeal

Following Prime Capital's appeal and its stay motion, the litigation and discovery in the underlying action continued unabated. On January 29, 2024, the Receiver filed a Third-Party Complaint and an emergency motion for an attachment order against the Third-Party Defendants. (*See* A1312; A1426.) The next day, Prime Capital opposed the Receiver's motion, noting that it suffered from a host of facial deficiencies. (*See* Dkt. No. 74.) Prime Capital pointed out that (a) the claims in the Third-Party Complaint are inextricably intertwined with the claims in the Complaint, which are subject to the Arbitration Agreement; (b) the District Court was divested of jurisdiction over matters relating to the receivership when Prime Capital appealed; and (c) the claims in the Third-Party Complaint are purportedly on behalf of Prime Capital, but the Receiver lacks the authority to bring such claims. (*See id.*, 1-2.) The District Court nevertheless entered a TRO in response to the Receiver's motion and set a hearing for February 15, 2024. (A1435.)

On February 7, 2024, Prime Capital filed its opposition to the Receiver's motion for attachment. (*See* Dkt. No. 103.) Prime Capital noted that the Receiver had skirted the District Court's discovery stay by demanding that subpoena recipients produce the information that Compass requested earlier. (*See id.*, 11-12.)

\4165-9927-3295  v2

On February 8, 2024, Prime Capital also filed a pre-motion letter regarding an anticipated motion to dismiss the Third-Party Complaint. (*See* Dkt. No. 115.)

On February 15, 2024, Kris Roglieri filed for personal bankruptcy. (A2019.) At the February 15, 2024 hearing, the District Court instructed the parties to brief whether the automatic stay in Mr. Roglieri's bankruptcy extends to his corporate entities. (A2043.) Those briefs were filed on February 20, 2024. (*See* A2046-56.)

### F.    March 19 Order

In a March 19, 2024 order (the "March 19 Order"), the District Court denied Prime Capital's motion to stay the receivership by construing it as a motion to vacate and holding that Prime Capital had not presented new evidence to vacate the appointment. (*See* Van Tol Decl., **Exhibit 2**, 20-29.)[3]  The District Court also held that the automatic stay does not extend to Mr. Roglieri's corporate entities.   (*See* Van Tol Decl. Ex. 2, 14-20.)  The District Court denied the Receiver's motion for

---

[3]      The District Court stated that in the March 19 Order the January 29 Order was a denial of a stay. (*See id.*, 21-22.)  Prime Capital, however, had not yet filed its motion for a stay when the January 29 Order came out.  Prime Capital instead assumed that the January 29 Order was referring to the fact that the 30-day stay of judgments in Fed. R. Civ. P. 62(a) does not apply to receivership orders.  *See* Fed. R. Civ. P. 62(c).  Rule 62(c) states that there is no stay from a receivership order "[u]nless the court orders otherwise." *Id.*  That is why Prime Capital immediately moved for a stay. (*See* A1289-90 (citing Rule 62(c).)  The District Court shortly thereafter set a briefing schedule for the stay motion without ever indicating that, in its view, it had already decided the stay issue or that the stay motion should be considered a new motion to vacate the receivership.  Such confusion caused an almost two-month delay in Prime Capital's ability to seek a stay from this Court.

\\4165-9927-3295  v2

Case: 24-264    03/27/2024    DktEntry: 28.1    Page: 217 of 228

Case 23-11302-1-rel    Doc 155-1    Filed 03/27/24    Entered 03/27/24 08:44:58    Desc
Memorandum of law in support of the stay motion    Page 19 of 30

an attachment, except as to funds that were sent from Prime Capital to Third-Party Defendant entities. (*See id.*, 41-54.)[4]  In addition, the District Court held that it would defer the Third-Party Defendants' motion to dismiss until after the arbitration, and ordered Compass and Prime to engage in discovery pursuant to the Arbitration Agreement.  (*See id.*, 70.)  Finally, in the March 19 Order, the District Court did not address Prime Capital's motion to compel arbitration and dismiss the Complaint.

## ARGUMENT

### I.    Applicable Legal Standards

#### A.    Mandatory Stay for Denials of Motions to Compel Arbitration

In *Coinbase*, the Supreme Court held that a district court that has denied a motion to compel arbitration  must stay the litigation before it while the appeal from the denial is pending.  599 U.S. at 738.  The Supreme Court emphasized that it is a waste of judicial resources to have litigation continue if the appellate court later rules that the matters being litigated are subject to arbitration.  *See id.* at 741.

---

[4]    The District Court's partial granting of attachment is internally inconsistent with its other holdings.  The District Court unequivocally held that "pre-judgment attachment is not warranted" against the Third-Party Defendants, including the corporate entities.  (*Id.*, 44.)  The District Court similarly held that it would not consider Prime Capital's arguments on jurisdictional issues relating to the Third-Party Complaint and the Receiver's authority because "the Court declines the Receiver's request for pre-judgment attachment."  (*Id.*, 47 n.11.)  These holdings cannot be reconciled with the District Court's ruling attaching funds sent from Prime Capital to the Third-Party Defendant entities.

\\4165-9927-3295  v2

### B.   Four-Factor Analysis for Discretionary Stay

"The factors relevant to granting a stay pending appeal are the applicant's strong showing that he is likely to succeed on the merits, irreparable injury to the applicant in the absence of a stay, substantial injury to the nonmoving party if a stay is issued, and the public interest." *Uniformed Fire Officers Ass'n v. de Blasio*, 973 F.3d 41, 48 (2d Cir. 2020) (internal quotation omitted). While "[t]he first two factors are the most critical," *id.*, "these criteria [are] somewhat like a sliding scale." *Thapa v. Gonzales*, 460 F.3d 323, 334 (2d Cir. 2006). "[T]he probability of success that must be demonstrated is inversely proportional to the amount of irreparable injury plaintiff will suffer absent the stay. Simply stated, more of one excuses less of the other." *Id.* (internal quotation omitted).

### II.   The Court Should Stay the Receivership Order Pursuant to *Coinbase* and/or the Automatic Stay Provisions of the Bankruptcy Code

### A.   *Coinbase* Applies Here

Although the District Court has not yet ruled on Prime Capital's January 16, 2024 motion to compel arbitration, its delay of nearly two and a half months in deciding the issue is effectively a denial. In addition, the concerns expressed in *Coinbase* are present here. As a result of the Receiver's third-party claims, the District Court will decide issues going to the merits; that would be a waste of judicial resources if this Court later decides that the Arbitration Agreement did not allow for the Receiver's appointment. The District Court recognized this issue with regard to

13

discovery because its order staying discovery cited *Coinbase*. (A1288.) This Court should extend *Coinbase* to stay the entire underlying action pending appeal.

### B. The Automatic Stay Bars Any Proceedings Against Prime Capital

The District Court misinterpreted *Queenie, Ltd. v. Nygard Int'l*, 321 F.3d 282 (2d Cir. 2003), and followed distinguishable cases in holding that the automatic stay does not extend to the wholly-owned non-debtors here. *First*, the District Court held that *Queenie* stands for the proposition that the "immediate adverse economic impact" standard is not satisfied by virtue of the debtor's sole ownership of a non-debtor and there must be separate evidence of an economic impact. (*See* Van Tol Decl., Ex. 2, 18-19.) That is not what *Queenie* says.

In *Queenie*, this Court noted that the automatic stay applies to non-debtors "when a claim against the non-debtor will have an immediate adverse economic consequence for the debtor's estate." 321 F.3d at 287. It then stated that one example of an "immediate adverse economic consequence" is where "there is such identity between the debtor and the third-party defendant that the debtor may be said to be the real party defendant." *Id.* at 288. The Court held that there was an identity between the debtor (Gardner) and Queenie "because [Queenie] is wholly owned by Gardner, and adjudication of a claim against the corporation will have an immediate adverse economic impact on Gardner." *Id.* The Court did not require a separate showing of immediate adverse economic impact on the debtor, nor did it set forth

any reason for its finding of an adverse impact other than Gardner's ownership of Queenie. Instead, the Court logically assumed that there would be an adverse impact by virtue of the debtor's sole ownership. *See, e.g.*, *Ng v. Adler*, 518 B.R. 228, 247 (E.D.N.Y. 2014) (citing *Queenie* and noting that courts "have regularly considered … the relationship between the parties in analyzing whether the stay should be extended to a non-debtor"); *M.E.S., Inc. v. M.J. Favorito Elec., Inc.*, 2010 WL 959604, at *2 (E.D.N.Y. Mar. 15, 2010) (finding that there was "no reason to distinguish this case from *Queenie*" because it was undisputed that debtors wholly owned the corporations to which the automatic stay was sought to apply). Because there is no dispute in this case that Mr. Roglieri is the sole member of the relevant entities, *Queenie* applies and the automatic stay extends to those companies.

*Second*, the cases cited by the District Court do not apply here. In the main case, *Cortes v. Juquila Mexican Cuisine Corp.*, 2020 WL 13550200 (E.D.N.Y. July 20, 2020), the court stated that: "In assessing whether immediate adverse economic consequences are likely to flow from a claim against a nondebtor, courts often have differentiated petitions for relief filed under Chapter 7 from those filed under Chapter 11, finding that the risk of adverse economic impact is absent when the debtor is liquidating under Chapter 7, as opposed to reorganizing under Chapter 11." *Id.* at *3. Thus, *Cortes* is inapplicable to this case because Mr. Roglieri filed for chapter 11 reorganization rather than chapter 7 liquidation. *See In re Roglieri*, 24-

\4165-9927-3295_v2

10157 (Bankr. N.D.N.Y.).  Two other cases cited by the District Court—*Le Metier Beauty Inv. Partners LLC v. Metier Tribeca, LLC*, 2014 WL 4783008, at *4 (S.D.N.Y. Sept. 25, 2014) and *Xue Hui Zhang v. Ichiban Grp., LLC*, 2018 WL 3597632, at *4 (N.D.N.Y. July 26, 2018)—are similarly distinguishable because they too involved chapter 7 liquidation instead of chapter 13 reorganization.[5]

Here, the claims against non-debtors clearly have had a detrimental impact on Mr. Roglieri's reorganization.  Two creditors of non-debtors, the Receiver and 1800 Park Avenue LLC (which has a claim against Prime Commercial Lending, LLC), have filed objections in Mr. Roglieri's bankruptcy and are actively litigating issues there.  (*See* Van Tol Decl., **Exhibit 3** and **Exhibit 4**.)  The Receiver's objection in Mr. Roglieri's bankruptcy is not based solely on his now-dismissed claims against Mr. Roglieri.  The Receiver has also cited his claims against the other Third-Party Defendants as the basis for his objection.  (*See* Van Tol Decl., Ex. 3.)

Therefore, even if *Queenie* does not establish a *per se* rule of economic harm in the context of wholly-owned companies and the non-debtors must show separate

---

[5]     The other case cited by the District Court, *Tailored Fund Cap LLC v. RWDY, Inc.*, 2020 WL 6343307, at *6 (N.D.N.Y. Oct. 29, 2020), does not even involve the issue of whether the automatic stay applies to non-debtors.

\\4165-9927-3295  v2

evidence of adverse impact, the automatic stay should be extended to the non-debtors because the claims against them will hamper Mr. Roglieri's reorganization.

### III.  In the Alternative, the Court Should Issue a Discretionary Stay

### A.  Prime Capital Has a Strong Likelihood of Success

In its initial brief filed with this Court on March 25, 2024 ("Appellant's Brief"), Prime Capital set forth its arguments on the merits. They will not be repeated here at length, but are summarized below:

(1)  The Receiver's appointment violated the Arbitration Agreement because (a) no one has cited any case where the court permitted a receivership under the "in aid of arbitration" language here; and (b) the receivership has clearly interfered with arbitration rather than assisting it.  (*See* Appellant's Br., 26-31.)

(2)  Compass did not carry its burden of making a "clear showing" that a receivership is warranted under the six-factor standard:

(i)  The receivership violates the Supreme Court's holding in *Grupo Mexicano de Desarrollo, S.A. v. Alliance Bond Fund, Inc.*, 527 U.S. 308 (1999) because its purpose is to secure assets for the collection of a future money judgment.  (*See id.*, 34-36.)

(ii)  The claims in the Complaint are primarily for money damages, and Compass cannot show that it has an equitable interest in the

Compass ICA Payment or a secured property interest that will be imminently lost or would be protected by a receivership. (*See id.*, 36-38, 40-42.)

(iii)    There would be no irreparable harm in the absence of a receivership in light of the money damages that Compass could recover from one of the defendants. (*See id.*, 38-40.)

(iv)    There was no showing of requisite fraudulent conduct by Prime Capital, and instead the evidence demonstrates that Berone defrauded Prime Capital. (*See id.*, 42-44.)

(v)    Compass has not established a likelihood of success on its breach of contract claim and, in any event, such a claim does not justify a receivership. (*See id.,* 44-47.)

(vi)    The balance of harms weighs heavily against a receivership, given its inherent destructive nature. (*See id.*, 47-48.)

Prime Capital, therefore, has demonstrated that it has a strong likelihood of success on the merits of its claims in this appeal.

## B.    Prime Capital Will Suffer Irreparable Harm in the Absence of a Stay

The courts have repeatedly noted that receiverships substantially interfere with the property rights of the company involved and greatly disrupt operations. *See, e.g.*, *U.S. Bank Nat. Ass'n v. Nesbitt Bellevue Prop. LLC*, 2012 WL 2033548, at *2

\\4165-9927-3295  v2

Case: 24-264  03/27/2024  DktEntry: 28.1  Page 224 of 228

Case 23-11302-1-rel    Doc 155-1    Filed 03/27/24    Entered 03/27/24 08:44:58    Desc
Memorandum of law in support of the stay motion    Page 26 of 30

(S.D.N.Y. June 5, 2012) ("The appointment of a receiver will result in a permanent change in the control of the defendants' property, and thus cause substantial disruption for the defendants."); *Insussary v. Adminstaff Companies, Inc.*, 1999 WL 305102, at *3 (S.D.N.Y. May 14, 1999) (noting that "the appointment of a receiver may cause unprecedented and inappropriate disruption of [the company's] day-to-day operations" and could cause a loss of clients); *Cutler v. 65 Sec. Plan*, 831 F. Supp. 1008, 1019 (E.D.N.Y. 1993) (noting that "receivership interferes with an individual's property rights by ousting him from control"); *Fed. Home Loan Mortg. Corp. v. Spark Tarrytown, Inc.*, 813 F. Supp. 234, 235 (S.D.N.Y. 1993) "(A receivership is a drastic remedy dispossessing former owners of assets, imposing substantial additional costs."). This loss of property rights and use, and associated costs, are difficult to measure and are not compensable through money damages.

A receivership will also, by its very nature, cause a company to suffer a loss of reputation, business relationships, and good will. The Second Circuit has held that a finding of irreparable harm can be based on "loss of reputation, good will, and business opportunities." *Register.com, Inc. v. Verio, Inc.*, 356 F.3d 393, 404 (2d Cir. 2004). That is because such damages "are difficult to establish and measure." *Id.* Accordingly, "[c]ourts have determined that a loss of existing business and a decline in the opportunity for new business may qualify as irreparable harm." *Regeneron Pharms., Inc. v. U.S. Dep't of Health & Hum. Servs.*, 510 F. Supp. 3d 29, 40

\4165-9927-3295_v2

Case: 24-264    03/27/2024    DktEntry: 28.1    Page 225 of 228

Case 23-11302-1-rel    Doc 155-1    Filed 03/27/24    Entered 03/27/24 08:44:58    Desc
Memorandum of law in support of the stay motion    Page 27 of 30

(S.D.N.Y. 2020) (finding irreparable injury based on reputational harm); *see also John E. Andrus Mem'l, Inc. v. Daines*, 600 F. Supp. 2d 563, 571-72 (S.D.N.Y. 2009) (finding irreparable harm due to harm to reputation where "physicians would cease" giving new business to the plaintiff and existing customers "would begin seeking alternative" arrangements); *Johnson Controls, Inc. v. A.P.T. Critical Sys., Inc.*, 323 F. Supp. 2d 525, 532 (S.D.N.Y. 2004) (finding irreparable harm where conduct would allow competitors to "lur[e] away the business of a number of [the plaintiff's] long-term ... clients," and noting that "there is little guarantee that, should [the plaintiff] ultimately prevail in this action, these clients would return").

The same is true here.  Mr. Roglieri submitted a declaration pointing out the substantial disruption to Prime Capital's business caused by the involuntary bankruptcy proceeding that Compass improperly commenced.  (*See* A1180-81.) That harm has continued and worsened with the receivership.  Therefore, given the nature of the injury that receiverships inherently cause, Prime Capital has shown that it will suffer irreparable harm in the absence of a stay.

## C.    Compass Would Not Suffer Substantial Injury if a Stay Were Issued

A stay would not result in any cognizable harm to Compass.  While Compass would no longer have Prime Capital's assets secured for future recovery on a money judgment, that does not constitute an injury (let alone a substantial injury) because, as discussed above, the courts cannot use equitable remedies for such a purpose.

\\4165-9927-3295  v2

Moreover, Compass could still seek money damages against Prime Capital and/or Berone. *See Nam v. Permanent Mission of Rep. of Korea*, 2023 WL 2456646, at *3 (S.D.N.Y. Mar. 10, 2023) (because plaintiff sought only money damages, it "will not face substantial harm due to a stay of the trial while this interlocutory appeal is decided"); *Noel Pane v. City of Greenburgh*, 2012 WL 12886971, at *4 (S.D.N.Y. March 21, 2012) ("[Plaintiff] will be able to recover monetary damages as compensation for any injury that she can prove she suffered."); *Plummer v. Quinn*, 2008 WL 383507, at *1 (S.D.N.Y. Feb. 12, 2008) (staying case when money damages could compensate any harm).

### D.   A Stay Would Be in the Public Interest

The receivership will continue to impair Prime Capital's arbitral rights in the absence of a stay. This is contrary to the strong public policy in favor of arbitrations. *See, e.g., Marmet Health Care Center, Inc. v. Brown*, 565 U.S. 530, 533 (2012) (Federal Arbitration Act "reflects an emphatic federal policy in favor of arbitral dispute resolution"). The issuance of a stay here would vindicate the public interest in arbitration by allowing Prime Capital to preserve its arbitral rights.

### IV.   The Court Should Grant an Interim Stay While It Is Deciding the Motion

Prime Capital will continue to suffer the harm discussed above if there is no interim stay. In addition, the Receiver has stated that he will seek to liquidate the Prime Capital's assets he has seized, which would result in irreparable harm. (*See*

\4165-9927-3295 v2

Van Tol Decl., **Exhibit 5**, ¶ 32.)  The Receiver is also asserting that he has sole power over Prime Capital's legal affairs and, as an example, he has purported to withdraw Prime Capital's statutory request for attorneys' fees and damages (worth millions of dollars) as a result of the wrongful involuntary bankruptcy proceeding brought by Compass and others.  (*See* Van Tol Decl., **Exhibit 6** and **Exhibit 7**.) Again, that legal right would be extinguished in the absence of an interim stay.

## CONCLUSION

For the foregoing reasons, Prime Capital respectfully requests that the Court grant the Motion and stay the receivership pending the determination of this appeal. Prime Capital also respectfully requests that the Court issue an interim stay pending the determination of the Motion.

Dated: March 27, 2024

Respectfully submitted,

HOGAN LOVELLS US LLP

By: */s/ Pieter Van Tol*

Pieter Van Tol
Peter Bautz
390 Madison Avenue
New York, NY  10017
Tel: (212) 918-3000
Fax: (212) 918-3100
pieter.vantol@hoganlovells.com
peter.bautz@hoganlovells.com

*Attorneys for Defendant-Appellant*

22

## CERTIFICATE OF COMPLIANCE WITH RULE 27(d)

I, Pieter Van Tol, attorney of record for the Appellant-Defendant, hereby certify that the foregoing memorandum of law complies with the type-volume limitation as set forth in Fed. R. App. P. 27(d).  The total number of words in the relevant sections of the foregoing brief is 5,198.

*/s/  Pieter Van Tol*
Pieter Van Tol

\\4165-9927-3295  v2