**KLESTADT WINTERS JURELLER**            Hearing Date: November 27, 2024
**SOUTHARD & STEVENS, LLP**                  @ 9:15 a.m.
200 West 41st Street, 17th Floor
New York, New York 10036
Telephone: (212) 972-3000
Facsimile: (212) 972-2245
Fred Stevens
Lauren C. Kiss

*Counsel to Debtor Prime Capital Ventures, LLC*

**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF NEW YORK**

In re:

PRIME CAPITAL VENTURES, LLC,          Case No. 23-11302-REL
                                                       Chapter 7

                                                      Debtor.

In re:

PRIME CAPITAL VENTURES, LLC,          Case No. 24-11029-REL
                                                         Chapter 11

                                                      Debtor.

**DEBTOR'S REPLY TO THE RESPONSE OF HOGAN LOVELLS TO
THE OBJECTION OF KRIS ROGLIERI TO THE DEBTOR'S NOTICE
OF ABANDONMENT OF PROPERTY PURSUANT TO 11 U.S.C. § 554**

**TO THE HONORABLE ROBERT E. LITTLEFIELD, JR.,
UNITED STATES BANKRUPTCY JUDGE:**

Prime Capital Ventures, LLC, the above-captioned debtor in both of the above-captioned bankruptcy cases (the "Debtor")[1], by and through its counsel, Klestadt Winters Jureller Southard & Stevens, LLP, as and for its reply (the "Reply") to the response, dated November 6, 2024 (the "Hogan Lovells Response") [Case 3 Dkt. No. 50] of Hogan Lovells US LLP ("Hogan Lovells") to

---

[1] There have been three bankruptcy cases filed in this Court where the Debtor was the debtor or alleged debtor as follows: (i) Case No. 23-11302 filed on December 19, 2023 ("Case 1"); (ii) Case No. 24-10531 filed on May 14, 2024 ("Case 2"); and (iii) Case No. 24-11029 filed on September 16, 2024 ("Case 3").

1

the objection, dated October 13, 2024 [Case 3 Dkt. No. 39] (the "Objection"), of Kris Roglieri ("Roglieri") to the Debtor's proposed abandonment of certain property pursuant to 11 U.S.C. § 554(a) (the "Proposed Abandonment") as set forth in the Court's order providing for the abandonment of the Potential Claims (defined below) if no objections were filed by October 16, 2024 [Case 3 Dkt. No. 31] (the "Abandonment Order"), entered based upon the Debtor's stated intention to abandon all right, title, and interest in connection with the Debtor's motion to compel the petitioning creditors in Case 1, Compass-Charlotte 1031 ("Compass"), LLC, 526 Murfreesboro, LLC ("526 Murfreesboro"), and Newlight Technologies, Inc. ("Newlight," and collectively with Compass and 526 Murfreesboro, the "Petitioning Creditors"), to post a bond in the amount of $37 million [Case 1 Dkt. No. 69], and any interest the Debtor has in connection with seeking damages or other forms of relief under 11 U.S.C. § 303(i) against Petitioning Creditors in connection with the involuntary petition filed by the Petitioning Creditors against the Debtor commencing Case 1 (the "Potential Claims") [*See* Case 1 Dkt. Nos. 72, 123, and 133], respectfully sets forth as follows:

## PRELIMINARY STATEMENT

Although couched as a timely response to the Objection, the Hogan Lovells Response is really a late objection to the Proposed Abandonment. Setting aside the timeliness of the Hogan Lovells Response, it should be overruled on the merits and the Proposed Abandonment should be approved by this Court.

Hogan Lovells, the Debtor's former counsel, asserts that the bankruptcy estate (the "Estate") should pursue the Potential Claims against the Petitioning Creditors in connection with the Petitioning Creditors' prior filing of an involuntary bankruptcy petition against the Debtor commencing Case 1. The Debtor disagrees for at least the following reasons:

2

- *First*, Case 1 was dismissed on the Petitioning Creditors' own motion so they could pursue the appointment of a receiver for the Debtor, which they did successfully just three (3) days after dismissal of Case 1.[2] Thus, the issue of whether the Petitioning Creditors' claims are subject to a bona fide dispute has never been determined by this Court and would have to be litigated before it could be determined whether the Potential Claims have any actual value. Following that, the award of Fees and Costs by this Court is discretionary. The Debtor is well justified in abandoning the Potential Claims simply to avoid the costs associated with litigating with the Petitioning Creditors and any uncertainty in outcome, especially when the Potential Claims have very limited potential value when compared to the $75+ million that the Debtor is believed to owe.

- *Second*, the Debtor believes that the Petitioning Creditors' claims are not subject to a *bona fide* dispute as alleged by the Debtor through its prior management and counsel. Even if the Debtor gives prior management (who has been indicted on five counts of wire fraud and is currently incarcerated pending trial)[3] and prior counsel the benefit of the doubt that they did in fact believe that a *bona fide* dispute existed when the Debtor asserted the Potential Claims on January 8, 2024, every single thing that has been revealed since that point confirms that the opposite is true and that the Debtor is rightfully and legally indebted to the Petitioning Creditors in the collective amount of at least $22.4 million.[4]

- *Third*, even if the Debtor was entitled to recover Fees and Costs under 11 U.S.C. § 303(i)(1) and this Court was inclined to award them in its discretion, the Estate could only recover its actual costs and "reasonable attorney's fee", which would be extraordinarily limited given that Case 1 only existed for twenty (20) days and Hogan Lovells was only involved for ten (10) of those days. Any "reasonable" fee would likely be less than the $398,692.50 that Hogan Lovells asserts was incurred during its ten (10) days of service to the Debtor in Case 1.

- *Fourth*, the Debtor is not aware of any evidence that any of the Petitioning Creditors acted in bad faith, which is necessary for the Debtor to be entitled to Damages under

---

[2] *See Compass-Charlotte 1031, LLC v. Prime Capital Ventures, LLC, et al.*, Case No. 24-cv-55 (MAD/CFH) (N.D.N.Y. Jan. 12, 2024).
[3] *See United States of America v. Kris Roglieri*, Case No. 24-cr-392 (MAD), Indictment at Dkt. No. 35 (N.D.N.Y. Sep. 19, 2024).
[4] *See, e.g., Compass-Charlotte 1031, LLC v. Prime Capital Ventures, LLC, et al.*, Case No. 24-cv-55 (MAD/CFH), Decision and Order of the Court at Dkt. No. 56 (Jan. 24, 2024) ("Plaintiff [a Petitioning Creditor] has sufficiently established its likelihood of success on the merits"); *United States of America v. One 2003 Ferrari Enzo AB Version E, et al.*, Case No. 24-cv-1345 (MAD/DJS) (N.D.N.Y. Oct. 22, 2024) (the "Forfeiture Action") (Government credibly alleges that the Debtor took the Petitioning Creditors' funds and used them for specific unrelated purposes and never returned them to the Petitioning Creditors).

3

11 U.S.C. § 303(i)(2). To the contrary, the Debtor has been given every indication that the Petitioning Creditors acted in good faith in initiating a proceeding, whether it be Case 1 or the subsequent action to appoint a receiver, in order to end the Debtor's business which the Federal Bureau of Investigation later characterized as "consistent with a fraudulent advance fee/Ponzi scheme". *See* Forfeiture Action, Dkt. No. 1, ¶ 24. Indeed, the Petitioning Creditors' efforts to initiate a proceeding and place the Debtor's assets in the hands of a responsible and independent steward were validated when the U.S. District Court appointed a receiver on January 24, 2024.

- *Finally*, the Debtor asserts that the equities of the case militate towards the Debtor's abandonment of the pursuit of speculative and *di minimis* Potential Claims against the Petitioning Creditors, who are victims of the Debtor's and its former principal's alleged fraudulent conduct and appear to collectively be owed at least $22.4 million by the Estate.

For these reasons, and those set forth below and in the Debtor's prior submissions, the Debtor asserts that the Potential Claims are of little, if any, value to the Debtor's estate and in any event, their abandonment by the Debtor is well within the Debtor's business judgment.

## BACKGROUND

### A. Substantive Background

1. The Debtor hereby adopts and incorporates all facts asserted in its response, dated October 25, 2024, to Roglieri's Objection (the "Debtor Response") [Case 3 Dkt. No. 43], without repeating them at length herein. All capitalized terms not otherwise defined herein shall have the same meanings ascribed to them in the Debtor Response.

### B. Procedural Background

2. On October 2, 2024, this Court entered the Abandonment Order (i) authorizing the Debtor's abandonment of the Potential Claims, and (ii) withdrawing the (alleged) Debtor's motion to compel the Petitioning Creditors to post a bond, subject to the rights of any parties to file an objection to the Proposed Abandonment by October 16, 2024 [Case 3 Dkt. No. 31].

4

3.      On October 15, 2024, Roglieri timely filed the Objection to the Proposed Abandonment [Case 3 Dkt. No. 39].

4.      On October 16, 2024, the Court scheduled the Hearing on the Proposed Abandonment and Objection for November 13, 2024, at 9:15 a.m., and authorized parties to file a response to the Objection by no later than November 6, 2024 [Case 3 Dkt. No. 40].

5.      On October 25, 2024, the Debtor timely filed the Debtor Response to the Objection.

6.      On November 6, 2024, Hogan Lovells filed the Hogan Lovells Response to the Objection [Case 3 Dkt. No. 50]. The Debtor asserts that the Hogan Lovells Response is, despite how it is titled, in form and substance an objection to the Proposed Abandonment that was due on October 16, 2024 pursuant to the terms of this Court's Abandonment Order.

7.      Upon consultation with counsel to Hogan Lovells, the Debtor filed an application on November 12, 2024, seeking (i) an adjournment of the hearing on the Proposed Abandonment from November 13, 2024, to December 18, 2024, and (ii) authority for the Debtor to file a reply to the Hogan Lovells Response [Case 3 Dkt. No. 52]. In response, also on November 12, 2024, the Court entered a text order adjourning the hearing on the Proposed Abandonment from November 13, 2024, to November 27, 2024, at 9:15 a.m., and authorizing the Debtor to file a Reply to the Hogan Lovells Response on or before November 20, 2024 [Case 3 Dkt. No. 53].

## **REPLY**

### A. The Hogan Lovells Response

8.      Hogan Lovells opens its response with the following: "[t]he Proposed Abandonment seeks not only to abandon the Debtor's claims but also seeks to concomitantly abandon the Debtor's fiduciary obligations to the creditors of this estate and advocate for an unworkable *ad hoc* approach to the application of bedrock principles of sound jurisprudence."

5

Hogan Lovells Response, p. 2. The Debtor is not entirely sure what Hogan Lovells means by that accusation, but it is certainly intentionally inflammatory.

9. Setting aside Hogan Lovells' overwrought assertion, the Debtor is simply proposing to abandon any Potential Claims for (i) reimbursement of the $398,692.50 in alleged Fees and Costs incurred by Hogan Lovells as counsel to the Debtor during the ten (10) days between its substitution for Cullen & Dykman LLP on December 30, 2023, and the dismissal of Case 1 on January 9, 2024, and (ii) any Damages caused by the Petitioning Creditors' commencement of Case 1 if the Petitioning Creditors were found to have filed Case 1 in bad faith. As set forth in its prior pleadings and again herein, the Debtor believes that abandonment of the Potential Claims is in the best interest of the Estate and creditors.

**B. Abandonment Generally**

10. Section 554 of the Bankruptcy Code provides, "[a]fter notice and a hearing, the trustee may abandon any property of the estate that is burdensome to the estate or that is of inconsequential value and benefit to the estate." 11 U.S.C. § 554; *see also In re Strelsky*, 46 B.R. 178, 180 (Bankr. E.D. Va. 1985) ("[t]he Trustee may relieve a debtor's estate from burdensome property or from property which is of inconsequential value by abandoning the property under section 554 of the Code.")

11. The decision of whether to abandon property is within the discretion of the debtor in the exercise of its business judgment. *See In re Republic Airways Holdings Inc.*, 547 B.R. 578, 582 (Bankr. S.D.N.Y. 2016) ("[t]he trustee's power to abandon property is discretionary and is bounded only by that of the court") (internal quotations omitted); *In re Interpictures, Inc.*, 168 B.R. 526, 535 (Bankr. E.D.N.Y. 1994) ("[f]rom the beginning of modern bankruptcy law, the courts have uniformly held that a trustee's power to abandon property is discretionary"). Courts

Main Document Page 7 of 15

have held that property is appropriately abandoned so long as the trustee provides appropriate notice and establishes a sound business justification to support its decision. *See In re MF Glob. Inc.*, 535 B.R. 596, 608 (Bankr. S.D.N.Y. 2015) ("the Trustee has provided notice of his intention to abandon the [property] and established a sound business reason to support his decision—to jettison unnecessary [property] in order to expeditiously close the SIPA Proceeding.").

12. In opposing the Proposed Abandonment, Hogan Lovells contends that the Potential Claims are valuable, and thus, the Debtor is breaching its fiduciary obligations to creditors by electing to abandon them. The Debtor respectfully disagrees for the reasons set forth in the Debtor Response and as set forth below.

**C. The Potential Claims for Fees and Costs Should be Abandoned**

13. Hogan Lovells asserts that it incurred $398,692.50 in Fees and Costs associated with representing the Debtor (then an alleged debtor) in Case 1[5], and that such Fees and Costs should be recovered from the Petitioning Creditors pursuant to section 303(i)(1) of the Bankruptcy Code.

14. Hogan Lovells argues that the recovery of Fees and Costs from petitioners in dismissed involuntary cases is the majority rule. Hogan Lovells is not wrong. However, one or more of the necessary petitioners in each case cited by Hogan Lovells had either a highly and unproven speculative claim or otherwise filed the case in bad faith. *See In re TPG Troy, LLC*, 492 B.R. 150, 160 (Bankr. S.D.N.Y. 2013) (petitioners' claims based on difficult alter ego theories "vigorously" disputed by the debtor); *In re Skyworks Ventures, Inc.*, 431 B.R. 573, 574 (Bankr. D.N.J. 2010) ("the court finds that the petition was filed in bad faith in a two-party dispute as a

---

[5] On November 6, 2024, Hogan Lovells filed a proof of claim against the Debtor, which was assigned Claim No. 7 (the "Hogan Lovells Claim"). As set forth in the rider (the "Rider") to the Hogan Lovells Claim, the aggregate amount of legal services that Hogan Lovells provided to the Debtor is $1,558,743.29. *See* Rider, p. 2. Of this amount, $398,692.50 was incurred by Hogan Lovells during Case 1. *Id.*

7

litigation tactic to force a settlement"); *In re Silverman*, 230 B.R. 46, 54 (noting that "the court is not required to impose fees and costs on the petitioning creditor" but doing so after finding that the petitioning creditor intended to harass the debtor knowing that its claim was subject to a bona fide dispute); *In re Landmark Distrib., Inc.*, 189 B.R. 290, 319 (Bankr. D.N.J. 1995) (awarding fees and damages after finding that the petition creditors decided to turn to the federal bankruptcy court to punish the debtor when negotiations failed for "spiteful and malevolent motives"); *In re K.P. Enter.,* 135 B.R. 174, 182 (Banrk. D. Me. 1992) (awarding fees and costs after finding that the petitioning creditor filed the petition in bad faith without the prerequisite number of creditors and made no attempt to find other creditors). Further, in each case cited by Hogan Lovells, the involuntary petition appears to have been dismissed on the debtor's motion, not on the petitioning creditor's motion as was the case here. Regardless, the award of Fees and Costs is entirely within this Court's discretion. *See* 11 U.S.C. § 303(i)(1) ("the court *may* grant judgment. . .") (emphasis added).

15. Here, the Petitioning Creditors' claims do not appear to be speculative or subject to a *bona fide* dispute. The Debtor took each Petitioning Creditors' money as a deposit in contemplation of making a loan to each Petitioning Creditor. The Debtor never made the corresponding loan, and accordingly, must return the deposit. Moreover, as set forth in detailed pleadings filed by the United States Attorney based upon an extensive investigation by the Federal Bureau of Investigation, the Debtor used each of the Petitioning Creditors' deposits for improper purposes wholly unrelated to the contemplated loans. *See* Forfeiture Action Complaint, ¶¶ 33-62 annexed hereto as <u>Exhibit A</u>.

16. The Debtor intellectually appreciates Hogan Lovells' argument that because the Compass and 526 Murfreesboro claims were the subjects of unfinished litigation, they were

8

deemed subject to *bona fide* disputes. However, the Debtor does not believe that the argument would survive when subjected to scrutiny at an evidentiary hearing, which is what would have occurred had the Court not dismissed Case 1 on the Petitioning Creditors' own motion. The Petitioning Creditors' claims certainly had facial viability at the time Case 1 was pending, and every single fact, revelation, and discovery since that time has only leant further support to the legitimacy of the principal amount of the Petitioning Creditors' claims.

17. Before the Debtor can prove any claim to Fees and Costs, it must prove that the Petitioning Creditors' claims are subject to a *bona fide* dispute. That claim will be met with vigorous opposition by the Petitioning Creditors, each of which wholeheartedly believes that it has a valid claim and that it has been defrauded by the Debtor and its prior management. That fight, win or lose (and the Debtor thinks it will lose), is going to utilize the very limited resources of the Debtor's estate as well as judicial resources to resolve. Under the facts of this case as they are currently known and understood, the Debtor submits that pressing a claim for the recovery of Fees and Costs from the Petitioning Creditors would not be prudent.

18. Even assuming that the Debtor was victorious in proving that one or more of the Petitioning Creditors' claims was subject to a *bona fide* dispute, it can only recover costs and "a reasonable attorney's fee". 11 U.S.C. § 303(i)(1). Hogan Lovells asserts that it incurred just under $400,000 in fees in the ten (10) days that it represented the Debtor in Case 1. The Debtor certainly does not concede the reasonableness of its prior counsel's fees and has serious concerns that the Debtor would ever be able to prove that those fees are reasonable if it were seeking to recover them from the Petitioning Creditors. $400,000 is a very significant amount of fees to incur in just ten (10) days in connection with seeking the dismissal of Case 1 and asserting the Potential Claims

9

in a motion.[6] Again, even assuming that the Debtor could prove that it was entitled to Fees and Costs, the Court would have to hear evidence regarding the reasonableness of the fees.

19. The Debtor also questions the Debtor's strategy in Case 1 altogether. If the Government is right, and the Debtor thinks that it is, Roglieri was using the Debtor as a vehicle to commit fraud. Roglieri admitted as much in text messages discovered by the Government during the pendency of Case 1.[7] Thus, it makes perfect sense why Roglieri would want the dismissal of Case 1. It would permit him to continue his bad behavior. However, it makes little sense why Hogan Lovells was willing to represent the Debtor and aggressively pursue Roglieri's strategy. Hogan Lovells knew very well that the Debtor was unable and/or unwilling to pay its debts as they

---

[6] Just to put this into context, the undersigned counsel incurred fees of just $714,224.25 in connection with its over-one-year representation of the chapter 11 operating trustee in *In re M. Burton Marshall*, Case No. 23-60263 (PGR) (Bankr. N.D.N.Y.), wherein the debtor perpetrated a $95 million Ponzi scheme. In that year plus, counsel accomplished, among other things: (i) drafting, promulgating, and obtaining approval of a disclosure statement and confirmation of the related plan of liquidation [Dkt. Nos. 317-318, 356-357 and 436]; (ii) marketing, conducting an auction, obtaining bankruptcy court approval of, and closing on the sale of 107 parcels of real property [Dkt. Nos. 359 and 435]; (iii) negotiating and obtaining bankruptcy court approval of the debtor's waiver of discharge [Dkt. No. 382]; (iv) completing a thorough investigation of the debtor's financial affairs and obtaining a finding from the bankruptcy court that the debtor had perpetrated a Ponzi scheme since at least 2011 [Dkt. Nos. 404 and 433]; and (v) reconciling nearly 1,000 noteholder claims and obtaining a bankruptcy court order fixing and allowing each of those claims so that distributions could be made [*Id*.]. To say the least, $400,000 for ten (10) days' work here appears to at least potentially be excessive.

[7] *See United States of America v. Kris Roglieri*, Case No. 24-cr-392 (MAD), Dkt. No. 6-1 (June 3, 2024) (emphasis added) (typographical and grammatical errors in originals):

| Date | Time | From | Message |
|---|---|---|---|
| 1/4/2024 | 11:20:42 am | Unknown | Can't you just keep working on those companies?<br>I know it might be hard at first, but look what you build this up to beat from nothing |
| 1/4/2024 | 11:20:56 am | Roglieri | Yea I can but not when I'm in f—king prison |
| 1/4/2024 | 11:21:09 am | Unknown | Why do you think that's gonna happen?<br>Why can't it just be a bankruptcy? |
| 1/4/2024 | 11:21:47 am | Roglieri | Because I unused others money to fund deals<br>I already told you this |
| 1/4/2024 | 11:22:02 am | Unknown | And that's illegal? |
| 1/4/2024 | 11:22:15 am | Roglieri | Yes |
| 1/4/2024 | 11:22:36 am | Unknown | How bad . I mean, what's the worst you do a couple years who cares<br>You have your family<br>This whole family will support you through this<br>It's a civil case it's not a criminal case |
| 1/4/2024 | 11:27:42 am | Roglieri | **It will turn criminal as soon as they get into bank statements** |

10

became dues because at the exact same time that Hogan Lovells was representing the Debtor in Case 1, it was simultaneously representing Camshaft CRE 1, LLC ("Camshaft") in litigation *against* the Debtor. *See Camshaft v. Prime Capital Ventures, LLC,* Case No. 2023-023173-CA-01 (Cir. Ct. 11th Jud. Circ. Miami-Dade Cty, Fla.) (the "Camshaft Litigation"). In fact, just eleven (11) days before appearing as substitute counsel for the Debtor in Case 1, Hogan Lovells filed a motion in the Camshaft Litigation on behalf of Camshaft seeking, among other things, a judgment against the Debtor in the amount of $12,400,000.00 and a final injunction against the Debtor requiring the Debtor to return Camshaft's deposit. *See Id.* at Filing No. 188377057 (Dec. 19, 2023) annexed hereto as Exhibit B.

20. Indeed, the Debtor has many questions for Hogan Lovells. For instance, how does a law firm that is representing a client actively involved in acrimonious litigation against the Debtor end up simultaneously representing the Debtor? How does a law firm that knows first-hand that the Debtor is not paying its debts as they come due allege in pleadings before this Court that the Debtor is generally paying its debts as they come due? *See Case 1*, Answer to Involuntary Petition, Dkt. No. 55, ¶11 (Jan. 5, 2024) ("[Debtor] was generally paying its debts as they became due except those that were subject to a bona fide dispute as to liability or amount"). What did Hogan Lovells understand was the Debtor's goal if it was successful in dismissing Case 1 and thwarting the appointment of a receiver? How did Hogan Lovells think that the Debtor was going to address its liabilities? Did Hogan Lovells have any understanding of the Debtor's assets and liabilities? Did the firm know about Roglieri's alleged criminal conduct? If it did not know about Roglieri's alleged criminal conduct at the time, now that it does, why does it want the Debtor to pursue seemingly petty claims against victims of the Debtor's and Roglieri's alleged fraud? Was dismissal of Case 1 really sought for the benefit of Hogan Lovells' client Camshaft to obtain a

11

preferred return for Camshaft to the detriment of the Debtor's other creditors? Answers to these questions will be obtained in time but admittedly need not be answered to resolve the issues currently before the Court.

21. For the foregoing reasons, the Debtor does not believe that the pursuit of Fees and Costs against the Petitioning Creditors is prudent and accordingly, the Debtor respectfully submits that those Potential Claims should be abandoned.

**D. The Potential Claim for Damages Should be Abandoned**

22. Any claim against the Petitioning Creditors for Damages pursuant to section 303(i)(2) of the Bankruptcy Code requires a showing that the Petitioning Creditors filed the involuntary petition in "bad faith". The grounds for abandonment of this claim are obvious. There is no evidence to which the Debtor is aware that demonstrates that the Petitioning Creditors acted in bad faith. To the contrary, the Petitioning Creditors appear to have acted in good faith. They sought in both Case 1 and the subsequent successful action to appoint a receiver to address all of the Debtor's significant debtor-creditor issues in a single public proceeding such that creditors would have transparency into the Debtor's financial affairs and where no single creditor could be preferred to any other creditors thus ensuring an equality of distribution of the Debtor's assets. Indeed, such actions resemble the very essence of good faith.

23. In fact, and in further support of the Petitioning Creditors' good faith, the reason the Petitioning Creditors moved to dismiss Case 1 was to be able to pursue recovery of their deposits in a different forum, after discovering that the Debtor made multiple misstatements and misrepresentations to the Bankruptcy Court and recognizing that the Bankruptcy Court lacked jurisdiction over certain non-debtor entities that were believed to be holding certain of the Borrower Prepayments. *See* Case 1, Docket No. 74.

24. "Because 'bad faith' is not defined in the [B]ankruptcy [C]ode, and because there is no legislative history addressing the intended meaning of this language, courts have used different approaches to determine whether a petition was filed in bad faith for purposes of § 303(i)(2)." *Lubow Mach. Co. v. Bayshore Wire Prods. Corp. (In re Bayshore Wire Prods. Corp.)*, 209 F.3d 100, 105 (2d Cir. 2000). Petitioning creditors are presumed to have acted in good faith by filing an involuntary petition, and the objecting party has the burden of proving bad faith. *See In re Synergistic Techs., Inc.*, No. 07-31733-SGJ-7, 2007 Bankr. LEXIS 2660, 2007 WL 2264700, at *6 (Bankr. N.D. Tex. Aug. 6, 2007); *In re Reveley*, 148 B.R. 398, 406 (Bankr. S.D.N.Y. 1992); *In re Reveley*, 148 B.R. at 406 (same); *but see Revson v. Cinque & Cinque*, 221 F.3d 71, 79 (2d Cir. 2000) (concluding that "bad faith" must be shown to impose sanctions under inherent power of the court or 28 U.S.C. § 1927, and "to impose sanctions under either authority, the trial court must find clear evidence that (1) the offending party's claims were entirely meritless and (2) the party acted for improper purposes"); *In re Green*, 422 B.R. 469, 474 (Bankr. S.D.N.Y. 2010) (in awarding sanctions under inherent power of the court, the court must find bad faith based on clear evidence).

25. The Debtor is unaware of any evidence that would lead to the Court's conclusion that the Petitioning Creditors acted in bad faith under the legal standards at play. To the contrary, the Petitioning Creditors' actions appear to have been done in good faith and for the attempted benefit of <u>all</u> the Debtor's creditors. Rather than race to the courthouse for a preferred return on the Debtor's assets like certain creditors, the Petitioning Creditors commenced Case 1 in order to try to provide a fair and transparent method of recovering assets and distributing the proceeds to creditors as provided under the Bankruptcy Code.

13

### E. Conclusion

26. The Debtor through its current management is entirely focused on the big picture and implementing a plan of liquidation that will provide the means and parameters by which the Debtor's financial affairs will be thoroughly investigated, claims pursued, and distributions to legitimate creditors made. The Debtor anticipates that claims will be asserted against any individuals or entities that benefited from the Debtor's and Roglieri's wrongdoing, and that received transfers of the Debtor's property made in furtherance of the Debtor's and Roglieri's fraud. The Debtor also anticipates asserting claims against any individual or entities that aided and abetted the Debtor's and Roglieri's fraud. These are the things that matter and the things deserving of the Estate's and this Court's time and attention. Pursuing Potential Claims that appear to be highly speculative if not totally doomed seems to be petty, a waste of limited time and resources, and an unnecessary distraction from the things that are truly important to the Estate's legitimate creditors and victims of the Debtor's and Roglieri's alleged frauds.

[*Continued on Next Page*]

**WHEREFORE**, the Debtor respectfully requests that the Proposed Abandonment be authorized and approved, the Debtor's Case 1 be dismissed, and that he be granted such other and further relief as is just.

Dated:   New York, New York
         November 20, 2024

                                       **KLESTADT WINTERS JURELLER**
                                        **SOUTHARD & STEVENS, LLP**

By:   */s/ Fred Stevens*
      Fred Stevens
      Lauren C. Kiss
      200 West 41st Street, 17th Floor
      New York, New York 10036-7203
      Tel: (212) 972-3000
      Fax: (212) 972-2245
      Email:  fstevens@klestadt.com
              lkiss@klestadt.com

      *Counsel to Debtor Prime Capital Ventures, LLC*